[L. A. No. 15137. In Bank.—July 1, 1937.]

JANE V. REINERT, Appellant, v. CALIFORNIA ALMOND GROWERS EXCHANGE et al., Respondents.

Webster & Lyon, Ray D. Lyon, Griffith & Thornburgh, William G. Griffith, Flint & MacKay, William A. Bowen, Edward L. Compton and Cosgrove & O'Neil for Appellant.

Warren Olney, Jr., McCutchen, Olney, Mannon & Greene, F. W. Mielke, C. P. Kaetzel and F. F. Thomas, Jr., for Respondents.

EDMONDS, J.—Questions concerning the rights and obligations of parties to a cooperative marketing agreement are presented by this case in which the appellant seeks an accounting of transactions with the respondent exchange during a period of eight years. In addition to the demand for a general accounting the appellant challenges the right of the exchange to make certain deductions for reserves and working capital and other charges. The trial court adopted an account submitted by the exchange and found that there was nothing presently due and payable to appellant at either the time of the commencement of the action or the judgment.

Appellant is the assignee of a corporation which during the years from 1924 to 1931 was the owner of large almond orchards and marketed its crops through the respondent exchange. The latter is a cooperative non-profit marketing association of almond growers. It was organized in 1910 and during the years in question conducted an extensive business in preparing, packing and selling almonds produced by its members. The claims of the appellant against the defendant Paso Robles Almond Growers Association have been adjudicated in another action between them and are not in controversy upon this appeal.

In 1924 appellant's assignor entered into a crop agency agreement with the respondent making the exchange its marketing agent. This agreement was later replaced by another, substantially the same as the first, which remained in effect

until 1932. By each of them the exchange was appointed sole agent and attorney-in-fact for plaintiff's assignor, with full power to transact such business and take such steps as it deemed necessary, without power of revocation. The exchange agreed to prepare for market and sell the almonds as agent for plaintiff's assignor and ratably to divide the proceeds of the sale of almonds of like variety and grade pooled therewith after deducting from said proceeds the ratable proportion of the expenses and expenditures of the exchange incurred in preparing and selling said almonds, and in providing for and carrying on the business operations and corporate purposes of the exchange as might from time to time be determined by its board of directors in accordance with its by-laws.

During the time appellant's assignor was a member of the exchange nuts delivered to it were handled in pools according to variety. During a part of the time the pools were subdivided by grading the different varieties. Under this system the nuts delivered by the different members were mingled and payment to each was based upon the number of pounds of nuts contributed to the particular pool. The amounts received by the exchange for nuts varied not only with market fluctuations but also depended upon such factors as variety, whether shelled or unshelled, and the type of container used. Certain expenses such as the cost of boxes and containers, and transportation charges were charged directly to the pool. General expenses for maintenance of the exchange and the cost of its operations were considered as charges against the entire crop of the year and were charged to the growers accordingly. The business of the exchange as shown by the statements in evidence is an extensive one, with gross proceeds of over $20,000,000 for the crop years from 1924 to 1931 inclusive.

During these years appellant's assignor delivered about seven million pounds of nuts to the exchange. Respondent agrees that the amount of almonds claimed to have been delivered under the contracts is correct and it admits that the appellant is entitled to a full and complete accounting therefor. The dispute concerns the nature and extent of the accounting which the respondent should give. The demand of the appellant is for what she terms a judicial accounting. She asserts that the exchange is a trustee and when called

upon by the *cestui que trust* must render such account under the supervision of the court and establish by evidence the correctness of each item of debit and credit.

The respondent contends that the appellant has had a complete accounting with full information concerning all transactions which her assignor had with it. The evidence of the respondent shows that during the years it was dealing with appellant's assignor it furnished various statements concerning the disposition of the different deliveries of nuts, and that after this controversy arose it opened its books for examination by plaintiff's auditor. This information and the detailed statements submitted with its answer the respondent claims amount to an accounting. In the trial court it successfully contended that the appellant was limited to showing in what respect the account submitted by it was incorrect and the issues were restricted to a consideration of the account as rendered by the exchange. However, the court received evidence concerning certain charges which the appellant contends the exchange had no right to make but it found all of the deductions were proper. Concerning appellant's right to an accounting it found ''that the statement of account attached to the answer of the defendants as Exhibit A is correct and true and represents correctly the credits to which the plaintiff is entitled and the debits properly chargeable against the plaintiff and is adopted by the court as its statement of account resulting from the accounting taken by the court''.

Whether the exchange should have been required to submit further details of its business during the time the appellant's assignor was a member is the first question presented upon appeal. The appellant insists that she has not been given the essential particulars of the items upon which the exchange computed the amounts to which her assignor was entitled. In particular she insists that the statements submitted by the exchange do not account by pools; that they do not show the credits to and charges against each pool nor how many pounds of nuts were included. It is claimed that the figures submitted by the exchange cannot be checked without this information.

An agent to whom goods are consigned for sale under an agreement that the proceeds after the deduction of expenses and other specified items are to be paid to the principal

must inform the principal of the price received for the goods and state the details of the charges which he has made against the proceeds. The accounts submitted by the respondent do not measure up to this requirement. ■ The appellant is entitled to an accounting which will give her complete information concerning the credits to and charges against all pools in which the nuts delivered by her assignor were packed and sold. (*Johnson* v. *Staple Cotton Coop. Assn.*, 142 Miss. 312 [107 So. 2]; *Arkansas Cotton Growers' Coop. Assn.* v. *Brown*, 168 Ark. 504 [270 S. W. 946, 1119]; *Rhodes* v. *Little Falls Dairy Co.*, 230 App. Div. 571 [245 N. Y. Supp. 432], affirmed 256 N. Y. 559 [177 N. E. 140].)

■ The exchange insists that its by-laws do not contemplate that there must be a tabulation by individual pools of the gross proceeds or expenses. But they make it the duty of the directors not only to provide for pools of the principal varieties of almonds, with reference to size, grade and other features, but also require the board of directors to render to each member as soon as practicable after the close of the season a statement or statements of the almonds received, of the pools established, and of all sums received from the sale or distribution of the almonds. These provisions clearly contemplate that the nuts are to be handled in pools and accounted for by pools. In any event, the evidence shows that the business of the exchange has been conducted by pools and it is not unreasonable to require the exchange to give the detail by which it arrived at the net amount to be credited to each grower. ■ Regardless of the by-laws, one who entrusts property to another for sale is entitled to such information concerning the proceeds of the sale and the expenses charged as will enable a person of ordinary intelligence to understand the transaction.

■ The appellant also complains of the method by which certain charges are made. According to her contention the evidence presented by the exchange shows that expenses have been charged improperly and that deductions allowed by the by-laws have been made on an improper basis. These questions challenge the accounting methods which the exchange has been following in dealing with its members.

As the exchange has no capital except such as has been contributed or loaned by its members, its expenses of operation must be met by deductions from or charges against the

proceeds of the nuts which it handles. These expenses consist of the costs incurred in connection with preparing, packing, shipping and selling the almonds, and what may be termed general expense, that is to say, those charges which are incidental to carrying on the business as a going concern and which cannot be allocated to any particular quantity of nuts. To meet these charges the board of directors is authorized by the by-laws ''To appropriate out of the proceeds of each year's crop in any year and in every year, when the same may be thought necessary or proper by said Board, a sum, in addition to the normal or base rate of compensation and expense allowance hereinafter fixed, sufficient to cover all sums paid or obligations incurred by the Exchange for receiving, transporting, preparing for market and marketing the almonds handled in that year by the exchange, and also sufficient to cover all sums paid or obligations incurred for advertising, experimental work, increase of plant capacity or betterments, or for other purposes advantageous to the general business of the Exchange.'' These sums ''shall be charged proportionately to each member, according to the number of pounds of almonds delivered by the members respectively for handling by the Exchange''.

The appellant contends that under this provision the amounts appropriated by the exchange for the purposes enumerated must be deducted from the gross proceeds due the members on an annual tonnage basis. This would mean that the total of these expenses for any year should be proportioned ratably against the total annual tonnage. The exchange insists that this would be inequitable. It asserts that direct expenses, such as those for receiving, packing, and shipping a particular pool of nuts, should be charged proportionately to the tonnage of that particular pool. It points out that expenses incurred in handling almonds varies greatly between particular pools. The reason for this is that one pool may have a much higher packing cost than in another. Likewise shipping charges per pound of nuts sold may be much higher for one pool than another dependent upon the place of sale. Other charges may also vary greatly.

The requirement of the by-laws is that these expenses shall be charged proportionately. A charge by either method may be said to be a proportionate one. The correct basis is not necessarily to be determined from the language of the by-laws

alone. In the further trial of this action the court should consider all admissible evidence concerning this issue and require the computation of these charges to be made upon the basis which the evidence shows is binding upon the parties.

To meet the cost of operating the exchange and other expenses in connection with it, the by-laws require that the board of directors "shall in each year withhold from moneys received from the sale or other disposition of almonds one-half cent per pound, which sum, together with all moneys accruing to the Exchange from withdrawals of members from local associations, from the payments of damages by members who violate their contracts, from shelling almonds, rental of machinery or appliances or property of any kind, and from all other sources, shall constitute a General Fund out of which shall be paid the salaries of officers and employees, fees and railway expenses of directors, and general and office expenses". A further deduction of one per cent per pound is also authorized by the by-laws, which amount is to constitute a special fund for certain specified purposes. A condition in connection with these funds is that the amount in either at the end of the year "shall belong to the members of the Exchange and shall be disposed of for their common advantage and that of the Exchange in repairs, renewals, replacements, betterments or extensions of the plants or properties of the Exchange or in such other way as the Board of Directors shall determine, or if deemed best by the Board may be accumulated as a working fund to provide for the financial needs of the succeeding year or succeeding years". The deductions made by the exchange for these funds are also subject to inquiry and may be allowed only on a basis authorized by the by-laws and any agreement of the parties.

The appellant also questions the figures submitted by the exchange for the 1930 and 1931 crops. Much of this objection concerns the tentative nature of the charges. Undoubtedly the exchange will now be able to furnish final figures for the 1930 and 1931 crops which will obviate this criticism.

However, it appears that in 1932 and succeeding years the exchange charged administrative and general expenses against the crops of such years and against whatever portions of crops of previous years were carried over. Thus the 1930 and 1931 crops paid the expenses of those crop years and in

addition were charged with a proportion based on tonnage of the expenses of later years. It appears that because of the large size and poor quality of the 1930 and 1931 crops and the economic depression at the time, the exchange was compelled to carry over a considerable portion of these crops into succeeding years. The charges made in 1932 and following years were occasioned by the cost of carrying this large quantity of almonds until such time as they could be sold. Whether the 1930 and 1931 crops may be required to share any expenses incurred subsequent to those crop years and if so in what amount is, in part at least, a question of fact which has not yet been passed upon by a trial court considering all of the evidence which may appropriately be presented in an accounting action. The present record, therefore, is not a proper basis for a determination of the respective rights of the parties to the proceeds of the 1930 and 1931 crops delivered to the exchange by the appellant's assignor. For the same reason the propriety of other charges made or reallocated by the exchange against the 1930 and 1931 crops, as well as the claim of the appellant that shelled nuts delivered in 1926 were by agreement to be paid for on a certain basis cannot now be decided.

Questions concerning the interest of the appellant in certain assets and reserve funds of the exchange are also presented without any findings of fact concerning the basis of their acquisition or the rights of the respective parties to them. Admittedly the appellant has a right to a substantial amount of money representing a proportionate interest in the accumulations of the exchange from the contributions of its members. The amount to which appellant is entitled and also the time when payment must be made to her are issues which must first be passed upon by the trial court. The new trial to be had will provide full opportunity for the consideration of these questions.

The judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed.

Seawell, J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.