[Civ. No. 242. Fifth Dist. Dec. 17, 1963.]

LEONARD L. WHIPPLE et al., Plaintiffs and Appellants, v. CHESTER D. HABERLE et al., Defendants and Respondents.

Taylor & Taylor and Edward T. Taylor for Plaintiffs and Appellants.

Carter, LaCoste & Keller, Edward C. Keller, Robert R. Elledge, Zeff, Halley & Price, Zeff & Price and E. Dean Price for Defendants and Respondents.

CONLEY, P. J.—Plaintiffs appeal from a judgment in favor of all defendants in a suit for declaratory relief, and in favor of cross-complainants for the restitution of premises and treble damages for unlawful withholding of possession.

Chester D. and Angie M. Haberle, husband and wife, owned residential property in the "Re-subdivision of Thousand Oaks" at Modesto; they listed it for sale with Campbell Real Estate operated exclusively by the defendant Brooks; the sale was to be for cash or cash through new loan. On August 1, 1959, Brooks obtained from appellants, Leonard L. Whipple and his wife, Edwina D. Whipple, a deposit of $500 as part payment in connection with an offer by them to purchase the house for $20,500 cash, of which $18,300 was to be secured by them from the proceeds of a proposed F.H.A. loan. Brooks introduced appellants to the defendant, Martha J. Cowdrey, a loan broker doing business as Sierra Mortgage Company.

The Whipple offer was accepted by the Haberles and on August 7, an escrow was set up with the defendant, Stanislaus County Title Company, in accordance with instructions given by Mr. Haberle. The agreement provided: "The undersigned, as purchaser have deposited with Campbell Real Estate $500, will hand you the balance cash on demand, for a total consideration of $20,500. (A portion of these funds will be proceeds of an $18,500 F.H.A. loan being arranged with Sierra Mortgage Company)"

The escrow instructions further stated that: "As between the purchasers and sellers it has been agreed that possession of the premises is to be given by agreement or close of escrow; but title company has no duty or obligation as to such possession."

Upon the opening of the escrow, appellants applied to the Western Mortgage Corporation through Mrs. Cowdrey for the F.H.A. loan.

In plaintiffs' complaint for "Declaratory Relief, for Specific Performance, and for Equitable Relief," they allege that on August 7, 1959, the property in question was encumbered by a deed of trust dated July 3, 1958, executed by Chester and Angie Haberle in favor of Amedeo Girardi and Mary

Girardi, husband and wife, securing the whole or a part of an indebtedness of $18,000 evidenced by a promissory note dated July 3, 1958, in the principal sum of $18,000 bearing interest payable annually at the rate of 5 per cent per annum from July 8, 1958; that the note stipulated that the principal sum should be paid in annual installments of $1,000, besides interest, on each July 1, starting July 1, 1959, and that the deed of trust contained no acceleration clause in the event of sale. Deposited in the escrow was a written demand by the Girardis for $18,000 of the purchase price as the amount due them, and the demand was approved in writing by the Haberles. The trial court found that the note and deed of trust in favor of Girardis were actually given by the Haberles in consideration of the Girardis cosigning and guaranteeing to the Bank of California another promissory note due on demand and executed by the Haberles as primary obligors, and that at the time the escrow instructions were executed, there was a balance due to the bank on the note of approximately $14,000.

Brooks and Cowdrey were informed at the time of the escrow that appellants would not move into the house unless and until the F.H.A. had approved the loan. This was known to the Haberles. Brooks was told by appellants that if and when they moved in they would make certain permanent improvements. The Haberles notified Brooks that they would not approve delivery of possession of the house until the loan had been approved by F.H.A.

On September 16, 1959, the Whipple application was forwarded to the Western Mortgage Corporation. On October 27, 1959, Mrs. Cowdrey was informed by the lending agency that it had approved the loan subject to approval by F.H.A. and Cowdrey so notified Brooks. On November 4, Cowdrey was informed by the Fresno office of F.H.A. that appellants' application had been referred to the San Francisco office of F.H.A. for final disposition. On the same day, Mrs. Cowdrey communicated these facts to Brooks; she testified that she knew that the final approval of such an application had to be made in San Francisco, that the Fresno office never divulged the status of an application prior to action by the San Francisco office, and also that F.H.A. had rejected previous loans after their approval by lending agencies; Brooks, too, had had several years' experience with F.H.A. loan applications and he had had an average of 20 of such loans per year with Cowdrey. In the conversation between Cowdrey and Brooks

and after being informed by Cowdrey of the exact information she had received from the Fresno office, Cowdrey testified that Brooks (through his employee, Bennett) requested her to notify appellants as follows: "Mr. Bennett advised me that the Whipples were anxious to move and although I didn't know at that time whether the loan had been approved or rejected by the F.H.A. since the lender had already approved the loan, I was going under the assumption that the F.H.A. had approved it. Mr. Bennett and I discussed this and Mr. Bennett's inquiry was as to the possibility of the Whipples' moving in at that time and I do not remember our exact words, but the gist of the conversation was this: Since the Fresno office had advised me that we would receive a communication within several days, I, being under the assumption that it was their approval of the loan, told Mr. Bennett these facts. Mr. Bennett then asked me to call the Whipples for him and advise them of these facts.

"THE COURT: And did you?

"THE WITNESS: I told him that I would.

"THE COURT: You told him you would, and did you thereupon call the Whipples? A. Yes, I did."

Mrs. Cowdrey further testified that immediately after this conversation at about 5:15 o'clock on November 4, 1959, she telephoned the Whipple home. As a message to be transmitted to his parents, she represented to Robert Whipple, son of the plaintiffs, that the Federal Housing Authority had approved the application for the loan.

On the same day, November 4, Brooks told the Haberles the loan had been approved by F.H.A. Brooks then had a conversation by telephone with Mrs. Whipple about her obtaining keys to move into the house, but Brooks did not indicate to her the exact status of the application or give any different statement from that given to the Whipple family by Cowdrey. The Haberles authorized Brooks to deliver the keys to appellants in reliance upon the statement made by Brooks to them that the loan had been approved by F.H.A.

By letter dated November 9, 1959, the F.H.A. advised the lending agency, which in turn notified Cowdrey, that the loan was rejected. No one notified appellants of the rejection at that time or any time prior to the completion of the improvements hereinafter mentioned.

On November 11, appellants in reliance on the false statement made by Mrs. Cowdrey on November 4 that the F.H.A.

loan had been approved and upon the delivery of the keys by Brooks moved into the house; on or about November 13 they began the making of improvements which cost a total of $1,738.96.

One of Cowdrey's employees told appellants that the loan had been rejected, but not to worry about it as they could work it out; Cowdrey suggested that the application be resubmitted to F.H.A. for reconsideration and that if it were refused appellants might apply for a conventional loan. The application was in fact resubmitted to F.H.A. by Cowdrey, but that agency refused to reconsider it and so notified Cowdrey November 24; appellants were never notified by Cowdrey of this refusal of reconsideration. They did not apply for a conventional loan, being convinced that they did not then have sufficient funds to complete the necessary escrow payment even if a loan for a smaller amount than that applied for to the F.H.A. had been secured.

On or about December 10, Brooks orally informed appellants that Haberles had financial commitments on the property and asked if appellants would be willing to pay "towards that." The Whipples agreed and gave Brooks a check for $110 for the Haberles stating that that was the amount appellants had been paying as rental for the premises they occupied before they moved into the Haberle house. The Haberles told appellants that $110 was inadequate and that $125 was fair; appellants said they agreed to pay such monthly sum "until the deal was consummated ... we were still in great hopes and had been led to believe that it was only a matter of time until the loan things would be straightened out."

On December 23, 1959, at a meeting held in the office of Robert R. Elledge, attorney for the Haberles, appellants again agreed to make monthly payments to the Haberles of $125. Appellants paid a total of $625 by one payment of $110, one payment of $140, and three payments of $125 before being served with a notice of termination. The Haberles testified that the agreement was for a four-month lease at a rental of $125 per month, and the trial court found accordingly.

On January 26, 1960, appellants wrote to the Haberles, and to Brooks and Cowdrey, offering to pay Haberles their entire cash equity in the house as shown by the records, to pay the amounts called for in the escrow agreement by the

title company for title costs and escrow, and to assume and make all payments thereafter upon the deed of trust to Girardis. The offer was never accepted. The court properly refused to admit the letter into evidence for any purpose, as it was an offer of compromise.

Shortly after March 10, 1960, the Haberles served upon appellants a notice to vacate the premises April 15 at the expiration of the tenancy. Appellants thereupon stopped making monthly payments on the advice of their attorney after receiving such notice, and then filed this action for declaratory judgment.

The Haberles filed an answer and cross-complaint which, in turn was answered by the cross-defendants. The title company filed a disclaimer. The other defendants and cross-defendants filed pleadings in due course.

The court's decision provided that the Whipples were not entitled to relief and gave judgment to:

1. Defendant, Stanislaus County Title Company, providing, however, that it return any and all documents and monies deposited with it to the party that deposited the same;

2. Defendants, Amedeo Girardi and Mary Girardi, on the complaint with their costs of $117.05;

3. Defendant and cross-defendant, Herbert Brooks, individually, and doing business as Campbell Real Estate, upon the complaint with his costs of $127.63;

4. Defendant and cross-defendant, Martha J. Cowdrey, doing business as Sierra Mortgage Company, on the complaint and on the cross-complaint with her costs as against Leonard L. and Edwina Whipple of $130.63;

5. Cross-complainants, Chester and Angie Haberle, as against the appellants for the possession of the premises described in the cross-complaint, and for treble damages in the sum of $375 monthly from the 10th day of April, 1960, until the possession of the premises described in the cross-complaint are restored to them with their costs of $117.05.

The notice of appeal is general and, therefore, all of the defendants are respondents; however, as to some of them, this appeal may be disposed of quickly. Stanislaus County Title Company filed a disclaimer and no one seriously contends that it is liable in any way to the plaintiffs in damages; the judgment orders it to surrender to persons who deposited with it the various papers in the escrow. Defendants, Amedeo Girardi and Mary Girardi, father and mother of Mrs. Haber-

le, as previously stated, have a trust deed on the subject property to secure the payment of a note for $18,000, because they were accomodation makers on another note which had previously been given by the Haberles to a bank; there is no sound basis for maintaining that the judgment in favor of the Girardis is, in any sense, erroneous. With respect to Mr. Brooks individually, and under his operative name of Campbell Real Estate, the court found on what is sufficient, although in part contradicted, evidence that Mr. Brooks was an agent for restricted purposes of the Haberles and that he did not make any actionable representations, either personally or through his employees to the Whipples. The judgment can not be disturbed as to him, inasmuch as he owed no duty to the Whipples, that resulted in any legal wrong toward them.

Turning to the appeal from the judgment in favor of Mr. and Mrs. Haberle, we find a rather strange quirk in the findings. Although the court determines that this is not a proper case for declaratory relief, it nevertheless does find in detail as to all of the essential facts of the controversy and grants or refuses relief accordingly. In these circumstances, we shall disregard as surplusage the trial court's conclusion of law that there is no proper ground for declaratory relief. Such a conclusion is normally made by a trial judge, if at all, at the beginning of litigation by means of a ruling on a general demurrer to the complaint, or by granting a motion to dismiss (see 2 Chadbourn, Grossman & Van Alstyne, California Pleading (1961) § 1085, pp. 316-319), and it is most unusual to carry a case through a lengthy trial and then to conclude on a discretionary basis that it is not a proper suit for declaratory relief. Incidentally, it seems clear to us that the case is an entirely proper one for declaratory relief, and that the Haberles as well as Mrs. Cowdrey and Mr. Brooks were legitimately joined as parties defendant, under the provisions of section 1060 of the Code of Civil Procedure. (*Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]; *Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747].)

The record supports the court's holding that the Whipples have no presently existing rights under the escrow agreement. The completion of the sale was contingent upon their raising $18,300 through an F.H.A. loan. The loan did not eventuate and the evidence justifies the conclusion reached by the trial court that the Whipples gave up any attempt to

raise the necessary money by a loan and that they had terminated any effort to carry through the proposed contract under the terms of the escrow. Appellants' apparent contention that the trial judge should lend a willing ear to a proposal of compromise is of no help to them; the court could not make a contract for the parties or force them to adopt new terms as the basis of a settlement.

Analysis of the holding of the trial court shows that after discovering the mistake which led to an occupation of the premises by the Whipples, the parties, by agreement, became landlord and tenant; and that they made an oral lease for four months which thereafter terminated. The Whipples' position that there was no tenancy is unrealistic and the evidence adduced by the Haberles and accepted by the court shows that whatever had gone before with respect to possession was set aside through this new agreement of lease.

 The contention is made that the court erred in trebling damages after the termination of the tenancy, but this determination was within the orbit of the court's discretion and there is ample evidence to show willfulness on the part of the Whipples and a deliberate, intentional and obstinate holding over of premises after the termination of the lease. (Code Civ. Proc., §§ 735, 1174; *Buck* v. *Morrossis,* 114 Cal. App.2d 461, 466-468 [250 P.2d 270]; *Gwinn* v. *Goldman,* 57 Cal.App.2d 393 [134 P.2d 915]; *Richard* v. *Degen & Brody, Inc.,* 181 Cal.App.2d 289, 302-304 [5 Cal.Rptr. 263].) We will not interfere with the discretion of the court in this respect, and the judgment insofar as the Haberles are concerned must be affirmed.

 The only remaining question is whether or not the judgment for Mrs. Cowdrey is sound; in this respect, we cannot agree with the trial court's conclusion in her favor. Mrs. Cowdrey was the agent of the Whipples for the purpose of securing an F.H.A. loan, and as such she owed a duty to the Whipples to exercise ordinary care in connection with the work that she was to do for them; to give them knowingly false information was a breach of her legal obligation as their agent. She was experienced in the field in which she served the Whipples, and when she sent word to them that their F.H.A. loan application had been approved she knew that she was telling an untruth. She admitted on the witness stand that the loan had not been approved. She simply assumed that it would be approved; but her statement of the fact of

approval was positive; and it led to the occupancy of the house by the Whipples and the carrying out of their plans to make improvements and repairs. The Whipples and the Haberles had both made clear statements that the house was not to be occupied until the F.H.A. loan was granted. This fact was known to Mrs. Cowdrey; while it is true that she did not have a fraudulent intent in giving the false information to her clients, the duty of an agent in the circumstances is broader and more positive than merely to refrain from actual fraud; she owed an obligation not to be negligent and a particular duty not to give false information. (*Duff* v. *Duff*, 71 Cal. 513, 532 [12 P. 570]; *Patterson* v. *De Haven*, 88 Cal.App. 418, 424 [263 P. 568]; *Reinert* v. *California Almond etc. Exchange*, 9 Cal.2d 181, 185 [70 P.2d 190]; *Gagne* v. *Bertran*, 43 Cal.2d 481 [275 P.2d 15]; *Rianda* v. *San Benito Title Guar. Co.*, 35 Cal.2d 170, 173 [217 P.2d 25]; Rest.2d Agency, § 381, p. 182; 2 Cal.Jur.2d, Agency § 113, p. 789, § 116, p. 793; 3 C.J.S., Agency, § 155, pp. 34-35, § 162, pp. 46-47; Civ. Code, § 3333.)

▇ As a proximate result of this breach on the part of Mrs. Cowdrey, the Whipples moved into the residence and expended a considerable sum of money on repairs and installations. They could not secure repayment of these sums from the Haberles, as held by the trial court, because they did not occupy the premises adversely to the Haberles and had not secured their consent to the making of these repairs and the installation of these additional fixtures. (Code Civ. Proc., § 741; *Hannan* v. *McNickle*, 82 Cal. 122, 127-128 [23 P. 271]; *Taliaferro* v. *Colasso*, 139 Cal.App.2d 903, 906-907 [294 P.2d 774].) Mrs. Cowdrey is not responsible for any part of the treble rentals awarded the Haberles as against the Whipples, for they are based on the subsequent creation of a landlord and tenant relationship, and the wilful refusal of the Whipples to remove from the premises, with which Mrs. Cowdrey had nothing to do.

In view of the foregoing holdings, it will be unnecessary to discuss in detail minor points relative to rulings on evidence and findings. It is sufficient to say that we find no additional error in the conduct of the trial which would change our conclusions as to the disposition of the judgment on appeal.

The judgment on the complaint is reversed as to the defendant and respondent Martha J. Cowdrey, individually

and doing business as Sierra Mortgage Company, and it is otherwise affirmed.

Brown (R.M.), J., and Stone, J., concurred.

The petitions for a rehearing were denied January 15, 1964, and appellants' petition for a hearing by the Supreme Court was denied February 5, 1964. Schauer, J., was of the opinion that the petition should be granted.