[Civ. No. 17773. First Dist., Div. One. Oct. 29, 1958.]

WALTER W. SCHAFFER et al., Appellants, v. AMERICAN TRUST COMPANY, as Executor, etc., Respondent.

Francis Heisler, Charles A. Stewart and Patricia Lane for Appellants.

Campbell, McHarry & Walker for Respondent.

ST. CLAIR, J. pro tem.*—Plaintiffs appeal from a judgment entered after the sustaining of a general demurrer to their complaint without leave to amend.

Plaintiffs filed a complaint "for relief in equity; to impress constructive trust upon the estate of JAMES LESLIE DOULTON . . ." alleging that they are the nephew, two nieces and the widow of a nephew of Harriot Dorr Doulton, the predeceased wife of James Leslie Doulton.

Harriot Dorr Doulton died on November 6, 1931. Her will, admitted to probate, devised and bequeathed the residue of her estate to the Monterey County Trust and Savings Bank to be held in trust, for the following purposes:

"(A) To permit my husband, JAMES LESLIE DOULTON, to occupy rent free my home . . . together with the furnishings and household appurtenances therein belonging and located. Said home to be kept intact for his use until his death or remarriage. Upon the remarriage or death" the use and occupancy was to go to the remaindermen.

Plaintiffs are these remaindermen, or their successors in interest. "Said Homestead shall be maintained by my trustees who shall expend out of income not exceed [sic] $150.00 per month on same.

"(B) To pay the net income from the remaining portion of said trust estate to my husband . . . until his death or remarriage." Upon his death or remarriage the income was to go to the remaindermen until the termination of the trust.

---

*Assigned by Chairman of Judicial Council.

"*(C) Upon the death or remarriage of my said husband and the death of the last survivor of my said nieces and nephews*" the trust was to terminate. "*I hereby request the Trustee to retain the El Paseo Building as part of this trust estate so long as it may be possible to do so, bu[t] said Trustee shall at all times have the power in its absolute discretion to dispose of said building for the best interests of this trust estate . . .*"

"*FIFTH: Said Trustee may either . . . operate . . . any business enterprise which it may receive from my estate, or it may sell . . . the whole or any part thereof . . . or it may sell . . . any of the trust estate . . .*"

"*SIXTH: 'If the net income of the estate during any financial year should be less than the sum of $5,000.00 then in that event the trustee shall take from the principal of the Trust an amount sufficient to make up said Five Thousand ($5,-000.00) Dollars and distribute the same as income, and the principal of the Trust shall be reduced by the amount so contributed to income.'*

"*SEVENTH: 'Each . . . beneficiary . . . shall be without . . . power . . . to . . . alienate, anticipate, or in any other manner affect or impair his . . . estates in and to the income and/or principal of this trust during the entire term hereof . . .'*" There follow certain more or less "standard" clauses in the creation of a spendthrift trust.

"*TENTH: I hereby appoint the MONTEREY COUNTY TRUST & SAVINGS BANK . . . the Executor . . . to continue and operate . . . any business operation or enterprise in which I am interested at the time of my demise . . . and also . . . it may sell . . . the whole or any portion of my estate, except as herein otherwise specifically devised . . .*"

"*I hereby give and bequeath to URBANO O. FERNANDEZ, the houseboy working for me and residing in Carmel, the sum of Five Hundred ($500.00) Dollars absolutely.*

"*I hereby give and bequeath to HARRY GROFF, my gardener, residing in Carmel, California, the sum of Five Hundred ($500.00) Dollars absolutely.*"

After alleging the contents of the will and the codicils, the complaint alleges the husband fraudulently procured distribution of the trust estate to himself by representing to the trustee that he was entitled to such distribution. The husband died on February 24, 1956, leaving the "home" and some $45,000 in cash to people other than the plaintiffs-remaindermen.

In a portion of the complaint the plaintiffs refer to and list as Exhibits "H" through "S" the eleven Annual Accounts of the Trustee, under the wife's will, from 1932 to 1944, and allege that the accounts were annually settled by the court. The Exhibits "H" through "S" were not actually attached to the complaint but, by stipulation at the oral argument, we have been furnished copies thereof. The plaintiffs did not plead, and we were not furnished with copies of the orders of the court settling the accounts.

The plaintiffs do allege the settling of the Final Account of the Trustee based on Exhibit "S" and the transfer thereof of all of the assets of the trust to the husband.

In Exhibit "Q," the Ninth Annual Account and Report of Trustee and Petition for Instructions, the trustee set forth the provisions of the will, and in particular Paragraph Sixth as to invasion of the corpus to pay the $5,000 annually to the husband. It alleged deficiencies in the said payments of $3,200 in the year ending August 9, 1937; $5,000 in 1938; $5,000 in 1939; $5,000 in 1940 to $5,000 in 1941 or total of $23,200 then owed the husband under the will. It further alleged that the husband offered to buy the property for $34,-000, subject to a then existing mortgage of $11,550, taken out by the trustee in a previous year; and had retained counsel and was demanding payment of the amounts due. The trustee sought instruction as to whether or not he should accept the offer of the husband.

In Exhibit "R," the Tenth Annual Account and Report of Trustee, it is alleged that, in response to the request as above, in the Ninth Account, the court had instructed the trustee to accept the offer of the husband.

Exhibit "S," the Eleventh Annual Account and Report of Trustee, and Petition for Instructions, contains allegation of deficiencies of payments to husband of $450 in 1941 (this showed up in Exhibits "Q" and "R") ; $5,000 in 1942; $5,000 in 1943; $5,000 in 1944 or a total of $15,450. It alleged the value of the total assets in the trust to be $10,964.50. The trustee requested instructions as to whether or not it should do the thing that plaintiffs allege it did, to wit, transfer all the assets of the estate to the husband.

It would appear that the only reasonable inference this court can make is that the court instructed the trustee to make the transfer in question.

*Are the plaintiffs bound by the orders settling the trustee's accounts?*

658

The plaintiffs were named and their addresses given (and an affidavit attached that the addresses were correct) in all of the annual accounts of the trustee. Section 1120 of the Probate Code provides a method for settling such accounts and imposed, by law, a duty on the trustee to mail a copy of the account to each beneficiary. That such duty has been performed is a disputable presumption. (Code Civ. Proc., § 1963.)

It follows that plaintiffs had notice of the proceedings.

A proceeding under section 1120 of the Probate Code (and all annual accounts specifically alleged they were filed pursuant to said code section) is a proceeding *in rem*. The filing of the petition setting forth the matters required by the code section noted vests jurisdiction in the probate court. (*Security-First Nat. Bank* v. *Superior Court,* 1 Cal.2d 749 [37 P.2d 69].)

When the prescribed procedure is followed, notice that a proceeding is pending and will be had at a specified time and place is deemed to have been given to all interested parties. (*Estate of Hensel,* 144 Cal.App.2d 429 [301 P.2d 105].)

In *Abels* v. *Frey,* 126 Cal.App. 48, at pages 53-54 [14 P.2d 594], the court said: "By giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appears and presents his claim, or fails to appear, the action of the court is equally conclusive upon him ' "subject only to be[ing] reversed, set aside, or modified on appeal" '. The decree is as binding upon him if he fails to appear and present his claim, as if his claim, after presentation, had been disallowed by the court."

*Security-First Nat. Bank* v. *Superior Court, supra,* 1 Cal.2d 749, is authority for the rule that the probate court, in a trust situation similar to the instant one, *has jurisdiction even if the beneficiaries are not served.* The last case is also authority that such an account, as herein, is binding on the remaindermen. See also Probate Code, section 1123, reading, "A decree rendered under the provisions of this chapter, when it becomes final, shall be conclusive upon all persons in interest, whether or not they are in being."

It would appear the plaintiffs have mistaken their

forum; they should have appealed from the orders settling the Annual Accounts of the Trustee. There is grave doubt that plaintiffs can now collaterally attack such orders (*Security-First Nat. Bank* v. *Superior Court, supra*) but it may be that the record, here, is not absolutely conclusive. Therefore, we feel it proper to consider the second point, which latter was earnestly argued by both parties.

*Was the trial court's construction of the will correct?*

The defendant's construction of the will is very simple: that Paragraph Sixth of the will is a direction to invade principal to make up the sum of $5,000 per year, and that the home was property included in the principal of the trust. This construction finds support in the failure to distinguish between the assets of the trust in Section Sixth, it referring only to "the principal of the Trust." Section Fourth devises and bequeaths in trust " 'all of my real and personal estate whatsoever and wheresoever situate, not . . . otherwise specifically disposed of . . .' ", specifically mentioning the home in the next paragraph, clearly indicating that the home is to be part of the trust property. The termination clause also does not distinguish between the house and the income-producing property, referring only to the "principal."

The plaintiffs' theory is based on a rather unusual approach. Keeping in mind that this is an appeal from a judgment entered upon the sustaining of a general demurrer without leave to amend, one would expect the plaintiffs to be arguing their allegations of fact to bring them into court.

Not so here. Plaintiffs must first persuade a court to adopt their construction of the will, and then their allegations of fact would come into play and become important. Thus, it is not surprising that both parties agree that what is before this court (subject to the above cited authorities on plaintiffs' mistake as to forum) is the construction of the will. It is axiomatic that construction of a will is a matter of law (26 Cal.Jur. 879) and both parties so agree.

The arguments of the plaintiffs are somewhat involved and a statement of some of the principles that have been laid down to guide in the construction of wills, and their applicability to the instant case, may be helpful. The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator. (*Estate of Newman,* 68 Cal.App. 420 [229 P. 898].) In the instant case the testatrix made her intent, concerning the invasion of the corpus of the trust

to make up the $5,000, unequivocally known, as far as the words of Section Sixth, standing alone, are concerned. In order to surmount this difficulty, plaintiffs seek to modify the words of Section Sixth by other words in the will. To do this one must, by construction, qualify the clear language of the section. ■ A construction of a will which gives effect to every expression is to be preferred to one which will render some term or provision inoperative. (Prob. Code, § 102; *Estate of Mallon*, 34 Cal.App.2d 147 [93 P.2d 245].) ■ A clear or distinct devise or bequest cannot be affected by inference or arguments from other parts of the instrument. (Prob. Code, § 104; *Estate of Moorehouse*, 64 Cal.App.2d 210 [148 P.2d 385]; *Estate of Salmonski*, 38 Cal.2d 199 [238 P.2d 966].)

Bearing in mind the above rules, an analysis of the plaintiffs' position is required.

■ Plaintiffs first argue, relying on the principle of construction that several testamentary instruments are to be construed together (Prob. Code, § 101), that all the instruments viewed together show a consistent dispositive plan "to benefit plaintiffs or some one of them." It is clear that the plaintiffs were to benefit after James' death or remarriage. However, there is also a clear intent shown by Section Sixth to provide James with $5,000 per year until one or the other event should terminate his tenancy. The former intent cannot be said to prevail over the latter, inasmuch as the testatrix expressly empowered the trustee to do those acts which could only result in defeat to the plaintiffs' interests.

■ Secondly, plaintiffs argue that the interpretation given the will by the trial court gives no effect to "the specific mandate that her home be kept 'intact.'" The will gives the property in trust for the purpose of "permit[ting] my husband, JAMES LESLIE DOULTON, to occupy rent free my home . . .; together with the furnishings and household appurtenances therein belonging and located. Said home to be kept intact for his use until his death or remarriage." This direction could mean that the house is to be kept "as is" with its furnishings for James' use during his lifetime; or that the surrounding land was not to be subdivided and sold, as defendant suggests. It would seem a strained construction to derive from the word "intact" in this context the intention that this property was to be exempted from the general provisions of Section Sixth, as plaintiffs do.

Plaintiffs also cite *Estate of Markham*, 28 Cal.2d 69, 74 [168

P.2d 669], holding that a provision that payments shall be made from the net income of the trust property "compels the conclusion that neither the corpus nor income in future years may be used unless there is a clear expression to the contrary in the trust instrument." Inasmuch as there is such a direction in Section Sixth, this case would be inapplicable here.

 Plaintiffs next argue that from the direction in the last codicil that "I hereby request the Trustee to retain the El Paseo Building as part of this trust estate so long as it may be possible to do so, bu[t] said Trustee shall at all times have the power in its absolute discretion to dispose of said building for the best interests of this trust estate" was a recognition that "the power of sale given applied only to the income-producing property, if at all" and "clearly indicates that the power to sell the homestead was forbidden in any event." This provision would only seem to indicate that, for some reason, the testatrix thought it was especially desirable to retain this building. It does not forbid the sale of other parts of the estate, and does not revoke either Section Sixth, or Section Fifth giving the power to manage and dispose of all the trust property. The codicil was executed September 4, 1931, about a month before the testatrix' death on November 6, 1931. The real property in the estate included the El Paseo Building, three lots, and a one-half interest in the home. The direction concerning the retention of the El Paseo Building would only seem to indicate that the testatrix believed the lots should be sold before the building if a sale of the corpus was necessary to make up the $5,000 payment.

Plaintiffs also argue that the spendthrift provisions in Section Seventh indicate that "the testatrix intended that no beneficiary should be permitted to pauperize himself, particularly with respect to the rent free use of the homestead." Section Seventh provides in part: "[A]ll of the income *and/or principal* under this trust shall be transferable, payable and deliverable only, solely, exclusively and personally to the above designated beneficiaries hereunder at the time entitled to take the same under the terms of this trust . . ." The testatrix seemed to have no objection to the beneficiaries pauperizing themselves, so long as they did it at the rate of $5,000 per year.

All of the allegations in the complaint concerning election under the will depend upon the adoption of plaintiffs' construction of the will. If the construction adopted by the

trial court is followed, the absorption of the corpus and income by James at the rate of $5,000 per year is not inconsistent with electing to take under the will.

The will contained a direction that the "[s]aid Homestead shall be maintained by my trustees who shall expend out of income not exceed [sic] $150.00 per month on same." The complaint alleged that the actual expenditure by the trustee for maintenance was less than $1,000.00, and that James "caused said homestead to deteriorate." Although it is not expressly alleged, it might be inferred from these allegations that this sum was necessary to keep the home in the condition it was at the time of the testatrix' death. However, it cannot be said that not expending $150 per month on maintenance was a breach of the trust. The $150 was a ceiling on the amount to be spent, not a minimum, and there is no express direction that the house had to be maintained so as to retain the relative value it had at the time of the testatrix' death. Section Fifth provides that the trustee "may generally handle, manage, operate and dispose of the whole or any portion of the trust estate in such securities, properties, or manner, and upon such terms and conditions as I might or could do, if living, or which said Trustee may deem most advisable." The trustee might reasonably deem it most advisable to expend minimum maintenance on the home so as to keep it within the trust estate as long as possible. If $18,000 had been expended on the home during the period from 1931 to 1941, the husband's claim for income might well have swallowed up the whole of the trust estate in 1941. Although the husband outlived the value of the corpus, the trustee's actions, at the time they were performed, would seem to have been directed at conserving the estate of the remaindermen as much as possible.

The trial court's construction of the portion of the will setting up the trust appears to have been correct.

The defendant advances the contention that, even under the plaintiffs' construction of the will, the alleged representations of the husband were not actionable. In view of the previous determinations, we make no holding on this point.

Judgment is affirmed.

Peters, P. J., and Bray, J., concurred.