[Civ. No. 8734.   Fourth Dist., Div. One.   Mar. 25, 1968.]

Estate of JANE McDONALD, Deceased.   A. MORGAN JONES, as Executor, etc., Petitioner and Respondent, v. JAMES R. McDONALD et al., Objectors and Respondents; DONALD S. BOND, as Executor, etc., Claimant and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

Glaser & Glaser and Jerome J. Glaser for Claimant and Appellant.

Ferguson, Ferguson & Newburn, Carstens, Todd, Wright & Toothacre and Edward M. Wright for Objectors and Respondents and for Petitioner and Respondent.

WHELAN, J.—Donald S. Bond (Bond), executor of the Estate of Mima MacArthur (Mima), appeals from a portion of a judgment ordering proration of federal estate tax, California inheritance taxes and appraiser's fees against Mima.

## FACTS

Mima and Jane McDonald (Jane) were life-long friends. Until her death, Jane resided in a house owned by Mima in Solana Beach. On or about May 3, 1961, Jane transferred, without consideration, 724 shares of American Telephone and Telegraph stock to herself and Mima as joint tenants. By a writing dated May 3, 1961, they agreed to provide in their respective wills that on the death of the survivor the stock would be bequeathed to the Paradise Valley Hospital in National City.

Jane died testate on February 15, 1964, in San Diego. Her last will, dated June 27, 1963, was admitted to probate. Mima, who had been named as executrix, was issued letters testamentary on March 3, 1964. Mima died on September 19, 1965, as a resident of New Jersey. Bond, of Trenton, New Jersey, was duly appointed executor of her estate.

A. Morgan Jones, who drafted Jane's will and had been named as successor-executor, was issued letters testamentary in Jane's estate on December 13, 1965.

The probate estate assets in her estate were appraised at $401,864.04.

For federal estate tax purposes, the Bureau of Internal Revenue fixed the value of the Telephone shares as $111,-342.60, or 22.14 percent of the gross estate.

Jane bequeathed her personal effects and the funds in her banking account to Mima. The bequest was valued at $6,973.-47. She bequeathed the residue of her estate to a niece and three nephews, to be divided between them equally.

## FEDERAL ESTATE TAX

The main controversy on appeal centers around paragraph FOURTH of Jane's will, which reads as follows:

"FOURTH: I bequeath that stock owned in the American Telephone & Telegraph Company, heretofore owned in joint tenancy with Mima MacArthur, and in compliance with that Agreement of the 3rd day of May, 1961 between Mima Mac-Arthur and myself, to the PARADISE VALLEY HOSPITAL, of National City, San Diego County, California. I direct, further, that any estate or gift tax assessed as a result of that gift to Mima MacArthur of a one-half undivided interest in shares of

stock in the American Telephone & Telegraph Company, held in joint tenancy by us, together with all inheritance taxes that may be by reason of my death due upon or in connection with any property or transfer thereof outside my probate estate; shall be paid by my Executrix and shall not be charged against or collected from any devisee, legatee or beneficiary of my probate estate or any transferee or beneficiary of any taxable property outside my probate estate.''

On July 7, 1966, Jones and the attorneys for the deceased executrix filed a final account under Probate Code, section 932. They alleged that no part of the estate tax on the stock should be prorated against Mima because Jane's will had directed otherwise, and sought to have Mima charged with a prorata of the estate tax solely on the $6,973.47 Mima took under Jane's will and with the state inheritance tax on that bequest and a prorata of the appraiser's fee attributable to appraising the joint tenancy stock.

The final account shows that the executor paid federal gift tax of $1,016.35 for the year 1961, and California state gift tax of $561.46 for the same year, with interest and penalties added thereto as to each tax. The account does not show on what gift the taxes were paid; at the time of oral argument neither side was able to enlighten the court on that point. The probability that the taxes were on the gift of a one-half interest in the shares is discussed hereafter.

On July 26, 1966, the residuary legatees (legatees) filed objections to the petition, asserting that Mima should be charged with the amount of estate tax attributable to the stock.

A hearing on the petition and the objections was held on August 5, 1966. Legatees received no written notice of the hearing and did not appear. The court refused to admit into evidence a letter written by Mima to the successor-executor and draftsman of Jane's last will, and refused to permit the draftsman to testify as to his conversations with Jane as to the terms of the will bearing on the meaning of paragraph FOURTH. Jones, the draftsman, however, testified that the language of that paragraph was clear and unambiguous, and indicated he would make an offer of proof only if the court found the provisions to be ambiguous.

The court found that the language used was not sufficient to avoid a proration of the estate tax, but that the direction that the inheritance tax on the joint tenancy shares be paid out of

the residue was clear. It entered the judgment now being appealed from requiring Mima to pay $23,821.31 in estate tax, $1,514.17 in inheritance tax on the bequest, and $101.26 toward the appraiser's fee.

Bond's subsequent motion for a new trial, filed later in the same day on which he filed his notice of appeal from the decree, and to vacate and set aside the judgment, was denied by the trial court. This court denied his motion for an order granting leave to produce additional evidence on appeal.

At the time of oral argument, it was conceded by both parties to the appeal that the joint tenancy in the stock was subject to being destroyed during the joint lives of Jane and Mima with a resultant undivided ownership as tenants in common as to an undivided one-half each.

During the course of argument on motion for new trial in the court below, it was stated by counsel for the residuary legatees, and assented to by counsel for Mima's executor, that Paradise Valley Hospital had preferred to and did take one-half of the shares during Mima's life, thus satisfying its rights under the agreement between Jane and Mima.

The decree declared:

"The decedent did not, by her Will, direct that any portion of the Federal Estate Tax which might become due or payable by reason of her death should be paid from her residuary probate estate, except, and only to the extent, that such estate tax was attributable to a gift made by the decedent of an undivided interest in shares of American Telephone and Telegraph Company common stock owned by the decedent. No portion of the Federal Estate Tax is attributable to such gift."

Among other provisions, it decreed as follows:

"The Federal Estate Tax, together with interest thereon, such tax, penalties and interest in the amount of $107,594.18 having been paid, is to be prorated among the transferees of the decedent's property and the devisees and distributees of the decedent's estate as follows:

"22.14% in the amount of $23,821.31 is chargeable against and payable by MIMA MACARTHUR.

"19.465% in the amount of $20,943.47, is chargeable against and payable by each one of the four residuary distributees.

"The Executor is directed to collect the amount chargeable against MIMA MACARTHUR from her estate."

Bond asserts that the trial court had not acquired jurisdic-

tion to fix the apportionment so as to be binding upon him, because he is a nonresident of California and did not have personal notice of the hearing upon the question of apportionment.

It is apparent, however, that the decree does not purport to award a judgment against Bond, so that the question of jurisdiction to render a personal judgment does not arise.

The statutes authorizing apportionment deal with a tax assessed against an estate, not against a person. The estate constitutes the *res* over which the court has jurisdiction. That a probate proceeding is one *in rem* and that the jurisdiction of the court in probate is an *in rem* jurisdiction is universally recognized. The only notices required in a probate proceeding are those prescribed by statute. Section 1200 of the Probate Code lists the matters of which special notice must be given. The hearing of a petition for apportionment of federal estate tax under section 970 et seq., Probate Code, is not among them. It follows that the court's jurisdiction to order an apportionment does not depend upon the giving of special notice to any of the persons interested.

Section 976, Probate Code, provides: ''The probate court, upon making a determination as provided in this article, shall make a decree or order directing the executor, administrator or other fiduciary to charge the prorated amounts against the persons against whom the tax has been prorated insofar as he is in possession of property or interests of such persons against whom the charge may be made and summarily directing all other persons against whom the tax has been prorated or who are in possession of property or interests of such persons to make payment of such prorated amounts to such executor, administrator or other fiduciary.''

In the decree under consideration, no such provision is made, so that the propriety of an order that Bond make payment is not involved.

Bond asks for an interpretation of paragraph FOURTH of the will that would free him from the obligation to pay any part of the estate tax on the joint tenancy shares.

Bond argues the language used was intended to and does mean that estate taxes on the full value of all the shares were to be paid; that the tax on the entire value of the shares was assessed as the result of the transfer of a one-half undivided interest.

The legatees argue that Jane intended the language to be operative only if an estate tax liability should arise as the re-

sult of an inclusion in the estate of an undivided one-half interest as a transfer made in contemplation of death under section 2035 of title 26, U.S.C.A.

It appears that the shares were included in Jane's gross estate as property held in joint tenancy to the purchase price of which the survivor had made no contribution. Such inclusion is provided for by 26 U.S.C.A., section 2040.

If the meaning of the court's holding was that the estate tax liability did not arise at the time of the transfer made in 1961, the trial court was correct. Whether it was equally correct in holding that the estate tax liability did not result from a gift is another question.

█ It is a statutory rule of testamentary construction that all language of the will is to be given effect if it may be done without violence to logic and consistency. (Prob. Code, § 102; *Schaffer* v. *American Trust Co.*, 164 Cal.App.2d 653, 660 [331 P.2d 188].)

The quoted language of the decree does not negate that Jane directed by will that the federal estate tax be borne by the probate estate to the extent that it was attributable to a gift of an undivided interest in the shares; but declared that "no portion of the Federal Estate Tax was attributable to such gift."

The decree did not hold that the language used was ambiguous or meaningless, but stated its meaning only in the negative language quoted.

The language clearly was intended to direct against full proration: either as to some of the property taxed, or to some extent, or under certain conditions.

█ Under what conditions, then, was the direction against proration to operate, and to what extent, and as to what property?

As to the extent to which the direction against proration should operate, consideration must be given not only to the language of the first part of the second sentence of paragraph FOURTH in which estate tax and gift tax are mentioned, but also the juxtaposition of that language with the wholly different language of the second part of that sentence, in which inheritance taxes are mentioned.

With regard to freeing Mima from the obligation to pay California inheritance taxes on the entire value of the joint tenancy property, Jane used language as to the effect of which no one disagrees. Had she wished the same result with regard to the estate tax, she could have inserted "all estate and inheritance taxes" in place of "all inheritance taxes."

This suggests not only that she differentiated between estate taxes and inheritance taxes, but that she did not intend that the burden of those taxes should fall upon the same persons with the same degree of force.

Jane could provide for the shifting of the tax burden as to one-half only of the value of the property. If such is the intention expressed in the language used, there is no reason to find a motive for her intention.

Legatees assert: "As in the case of the proviso regarding gift taxes, the provisions relating to an estate tax resulting from a 'gift of an undivided one-half interest' would be significant should the joint tenants terminate the joint tenancy by agreement or otherwise so that each took an undivided one-half interest in the stock . . ."

As to the conditions under which the direction against proration was to become operative, certain arguments which were suggested by the legatees are mutually inconsistent: the direction against proration was to operate only if a one-half undivided interest in the shares should be taxed as a part of the gross estate as having been made in contemplation of death; the creation of the joint tenancy was not a gift made in contemplation of death; the one-half undivided interest would be included in Jane's gross estate as a gift made in contemplation of death only if the joint tenancy should have been severed during her lifetime.

The inconsistency of those arguments is this: If at the time of the creation of the joint tenancy there was no gift in contemplation of death, the severance of the joint tenancy during Jane's lifetime could not operate retroactively to convert into a gift made in contemplation of death that which did not constitute such a gift at the time of its creation.

To say, therefore, that the direction against proration was to operate only in the event the one-half undivided interest should be included in Jane's gross estate as a gift made in contemplation of death is to render meaningless the language of the intended direction against proration.

The corollary to the argument of the legatees is that if a gift made by the creation of a joint tenancy be considered as a gift of a one-half interest made in contemplation of death in the event the joint tenancy should be severed during the joint lives of the owners, then such a gift was made although the joint tenancy was not severed.

The case of *Osterloh's Estate* v. *Carpenter*, 337 S.W.2d 942

(Supreme Court of Missouri), considered whether a gift of property in joint tenancy could be considered as made in contemplation of death so as to be subject to Missouri inheritance tax. Missouri law did not then make property held in joint tenancy subject to tax. The Missouri court held that it was not a transfer made in contemplation of death within the meaning of the Missouri statute; and chiefly, it seems, because the donor might, after all, be the survivor.

Thus had Mima predeceased Jane and the joint tenancy been maintained intact up to the time of Mima's death, the value of the shares, if retained by Jane, would have been subject to estate tax and in the same amount as actually occurred, but not, however, as property held in joint tenancy.

The subject was considered also in *Estate of Gurnsey,* 177 Cal. 211, where it is said, at pages 216-217 [170 P. 402] : "The inheritance tax law, prior to 1915, imposed such tax upon transfers by gift, 'intended to take effect in possession or enjoyment,' by the donee, only at or after the death of the donor. A transfer to joint tenants, without other conditions, does not come within that description, for, as above shown, it gives to the donee immediately the title and the right of possession and enjoyment of the whole, and he succeeds to no new title or right upon the death of his cotenant, but is merely relieved thereby from the further interference of the cotenant. . . .

". . . The mere creation of a joint account, and the addition to it of deposits made by way of gift from the community property to the joint estate, as we have shown, do not constitute conclusive evidence that the gifts were made in contemplation of death, or were intended to take effect at or after death."

We conclude from the last quoted language that *Estate of Gurnsey, supra,* does not hold that the creation of a joint tenancy, although it is not by its nature alone made in contemplation of death, is not excluded necessarily from gifts of that class.

But to say that the tax was not imposed upon the shares as the subject of a gift made in contemplation of death is not to say that the tax was not assessed as the result of a gift made in the creation of the joint tenancy.

It is not alone because the shares had been held in joint tenancy that they were taxed as a part of Jane's gross estate. It was, also, because Mima, who acquired them, had not contributed anything of value in terms of money to their purchase; it was because as to Mima they were a gift.

As to what property included in Jane's gross estate was the direction against proration intended to apply?

It should not be assumed that the testatrix believed a liability for estate taxes arose at the time of the transfer. If she did not believe that, what did she intend in using the words "estate . . . tax assessed as a result of that gift of a one-half undivided interest in shares . . ."?

In strictness, the creation of the joint tenancy was not the result of the gift of a one-half undivided interest. Rather, there was a transfer of the whole into joint tenancy, the result of which was not to create two undivided interests of one-half each.

The interest then created in Mima was not one that was doubled upon the death of the other joint tenant; the estate of the surviving joint tenant did not vest at the time of death but at the time of the creation of the joint tenancy.

Exactitude of language is not found invariably in decisions dealing with the subject. Thus in *Estate of Darby*, 93 Cal.App. 2d 96, 98-99 [208 P.2d 689], it is said of a deed creating a joint tenancy among three people: "The conveyances in 1929 from mother to daughters were unquestionably valid gifts. Thenceforth, each was the vested owner, in joint tenancy, of an undivided one-third interest in the property."

Should we assume that Jane believed she had indeed made a gift to Mima of an undivided one-half of the shares; or should we not, rather, assume that she understood that legally the joint tenancy did not create the undivided interests?

On the latter assumption, the language used in the will would serve merely to identify that share of the taxable estate, the tax burden of which Jane wished to shift from the person upon whom it would fall under a legal proration.

We consider it beyond question that a gift tax liability as to one-half the value of the shares arose upon the making of the transfer under 26 U.S.C.A., sections 2501 and 2511.[1]

The direction in the will to pay the gift tax on the gift of a one-half interest in the shares did not add anything to the executor's obligation; the payment of that tax was primarily the obligation of the donor, Jane, rather than the donee, Mima.

---

[1]Federal Tax Regulation 25.2511-1(h)(5) declares: "If A with his own funds purchases property and has the title conveyed to himself and B as joint owners, with rights of survivorship (other than a joint ownership described in example (4)) but which rights may be defeated by either party severing his interest, there is a gift to B in the amount of half the value of the property."

The use of the language with regard to the gift tax does, however, serve to give meaning in identifying the property on which the estate tax was to be paid from the assets of the probate estate.

Effect may be given to the language used by Jane in holding that she intended to relieve Mima of paying the estate tax on that portion of the value of the shares that was subject to gift tax, to wit: a one-half of such value; we so hold.

The executrix was entitled to a credit against the estate tax in the amount of the principal of the gift tax paid on the transfer of the shares. If that credit was claimed and allowed, the benefit of it equitably should be given as a deduction from the one-half of the estate tax payable on the shares by Bond.

### California Inheritance Tax

Although the court found that Jane had directed that the probate estate bear the inheritance tax on the joint tenancy shares, the decree provided that Mima should pay $1,514.17, the full amount of inheritance tax paid upon all property passing to Mima, including the joint tenancy shares. That error seems to have resulted from the failure of counsel in preparing the decree.

The amount properly payable by Mima is arrived at by applying a 7 percent factor to $8,967.36, representing the value of her bequest of jewelry and cash ($6,973.47), plus $2,043.89, a figure adopted by the appraiser as the value of the bequest of the freedom from tax on the shares, less the exemption of $50. (Rev. & Tax. Code, § 13407.)

No doubt the $50 exemption should be spread over the whole of Mima's taxable share. However, the inheritance tax appraiser magnanimously fixed the value of Mima's interest in the shares as though it were a life estate with remainder over to the hospital, a charitable organization. Thus, instead of paying tax on $103,869.13 (the value placed on the shares by the appraiser), the executor paid for Mima's benefit tax on only $11,471.57 of the appraised value of the shares.

The appraiser's report shows also that a credit of $529.72 was allowed for gift tax paid on the joint tenancy. That credit properly is allowable to the executrix of Jane's estate who paid the inheritance tax on the shares.

Under section 14773, Revenue and Taxation Code, Mima as transferee was liable for the appraiser's fee for appraising the joint tenancy shares. The proportion properly chargeable against her would be in the ratio that the full

value of the shares bore to the value of the taxable estate. That seems to be the proportion found in the figure of $101.26 adopted by the court.

The judgment is affirmed except as to the proration of federal estate tax and the finding that Mima's share of inheritance tax was $1,514.17; as to the direction for such proration and the fixing of Mima's inheritance tax liability the judgment is reversed, and the matter remanded, with directions to the trial court to proceed in accordance with the views expressed herein.

Brown (Gerald), P. J., and Coughlin, J., concurred.