[Civ. No. 38382. Second Dist., Div. One. Oct. 8, 1971.]

Estate of ALICE R. CAMPBELL, Deceased.
WILLIAM P. CAMPBELL, as Executor, etc.,
Petitioner and Respondent, v.
CHRIST PROTESTANT EPISCOPAL CHURCH OF
WELLSBURG, BROOKE COUNTY, WEST VIRGINIA,
Claimant and Appellant.

## COUNSEL

Oliver S. Northcote and Walker, Wright, Tyler & Ward for Claimant and Appellant.

George O. West, Thomas V. Girardi, Claybourne H. King and William O. Carlisle for Petitioner and Respondent.

## OPINION

**LILLIE, J.**—Decedent executed her will July 16, 1960; she died June 9, 1969, leaving no spouse, child, parent or grandchild but as heirs and legatees two adult nephews, a grandnephew and a grandniece. Her estate had an appraised value of in excess of $560,000. Paragraph Sixth of the will provides: "Upon the conditions hereinafter expressed, and not otherwise, I give and bequeath to CHRIST PROTESTANT EPISCOPAL CHURCH of Wellsburg, Brooke County, West Virginia, from my sister, JEANETTE, and myself, as a memorial to my mother, NANNIE C. CAMPBELL, all shares of beneficial interest in the Massachusetts Investors Trust which are owned by me at the time of my death. Said shares and the proceeds of the sale or other disposition thereof shall constitute an endowment fund which shall be kept intact and the income therefrom used by said church as may be determined by the rector and vestry of such church. It is my desire to provide such church with a continuing income. The condition of such gift and bequest is that in accepting the same said church shall agree in writing to provide adequate perpetual care for the cemetery lot in the Brooke County Cemetery, which is known as the Campbell lot, that is to say, the lot in which various members of my family are buried."

At the time of her death the shares of Massachusetts Investors Trust owned by decedent totaled 947 (now increased to 985.34) and were appraised at $15,331.93; the estimated yearly income therefrom is slightly in excess of $1,000. On March 22, 1970, trustees of Christ Protestant Episcopal Church complied with the condition set forth in paragraph Sixth passing a resolution accepting the bequest "with the understanding the proceeds shall be kept intact, the interest to be used by the church as 'may be determined by the rector and vestry of the church,' and with the further understanding that the Trustees shall provide for adequate and perpetual care for the Campbell Cemetery lot in Brooke County Cemetery." (Exh. E.)

On October 20, 1970, the executor rendered first and final account with exhibit E attached; it was heard December 21, 1970. In its order settling

first and final account the trial judge denied the legacy: "This Court . . . finds that the charitable bequest of all shares of MASSACHUSETTS INVESTORS TRUST bequeathed under ARTICLE SIXTH of the Will of Alice Campbell on file herein violates the perpetuity rules of the Health and Safety Code of the State of California, Sections 8250, 8725, 8730 and 8734 [*sic*][11] (Estate of Pfund (1949) 93 C.A.2d 444, 209 P.2d 52)." Christ Protestant Episcopal Church appeals from that portion of the order denying distribution to it. The appeal is on the judgment roll. ▪ The sole issue is the validity of the bequest.

Perpetuities are barred in this state by article XX, section 9, California Constitution, and section 715, Civil Code: "No perpetuities shall be allowed except for eleemosynary purposes." Section 715.2, Civil Code, provides: "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. . . ."

Paragraph Sixth of the will creates a perpetuity because by its terms it requires the fund to be kept intact and prohibits the trustee from ever invading the principal thereof. However, this perpetuity is expressly created for eleemosynary purposes and thus exempted from the prohibition of article XX, section 9, and section 715.2, Civil Code. ▪ The term " 'eleemosynary purposes,' . . . has consistently been held to be synonymous with the word 'charitable.' " (*Estate of Pfund*, 93 Cal.App.2d 444, 445 [209 P.2d 52].) ▪ The gift to appellant church to be used by it "as may be determined by the rector and vestry" and to provide it "with a continuing income" is for a charitable purpose to carry on the work of the church[2] (*Estate of Cottrill*, 65 Cal.App.2d 222, 223 [150 P.2d 214]; *Estate of Graham*, 63 Cal.App. 41, 43 [218 P. 84]) and for "religious purposes." (*Estate of Moore*, 219 Cal.App.2d 737, 742 [33 Cal.Rptr. 427]; *Estate of Henderson*, 17 Cal.2d 853, 857 [112 P.2d 605].) Without question the persons who are to benefit (all members of the church) are of a sufficiently large or definite class so that the community of Wellsburg is interested in the enforcement of the bequest (*Estate of Pfund*, 93 Cal.App.2d 444, 446 [209

---

[1] It is apparent that the court intended to cite section 8737, Health and Safety Code, instead of 8734, repealed in 1951. Provisions of sections 8250, 8725, 8730 and 8737, Health and Safety Code, are not here applicable. Section 8250 expressly provides that part 3, division 8, which includes the foregoing sections and relates to private cemeteries does not apply to "Any religious corporation, church, religious society or denomination. . . ." (§ 8250, subd. (a), Health & Saf. Code.) Exhibit E attached to first and final account establishes, in the absence of evidence to the contrary, that appellant is a church.

[2] The trial judge in his finding in the order designated the bequest as "the charitable" bequest of all shares of Massachusetts Investors Trust.

P.2d 52]); and the fact that decedent may also have been motivated by a desire to perpetuate the memory of her mother under the circumstances here does not destroy its charitable character. (*Estate of Robbins,* 57 Cal. 2d 718, 724 [21 Cal.Rptr. 797, 371 P.2d 573]; *Estate of Mayer,* 237 Cal. App.2d 549, 552 [47 Cal.Rptr. 44].)

Decedent, however, imposed a condition on appellant church in "accepting" the bequest—that it "agree in writing to provide adequate perpetual care for the [Campbell] cemetery lot in Brooke County Cemetery." ■ Had the bequest directed that the income from the fund be used to maintain the Campbell lot, a serious issue concerning its validity would arise for there is no question but that in California a testamentary provision creating a perpetual trust to preserve and keep in repair a burial lot, monument or grave is not for a charitable use in the legal sense, but for a purely private and personal use that in no way benefits the public generally, and does not constitute the "eleemosynary" purpose excepted by article XX, section 9, California Constitution. (*Estate of Gay,* 138 Cal. 552, 554-555 [71 P. 707]; *Estate of Willey,* 128 Cal. 1, 10-12 [60 P. 471]; *Estate of Pfund,* 93 Cal.App.2d 444, 446 [209 P.2d 52].) In *Estate of Pfund,* $1,000 was left in trust to a fraternal order to supply and erect a headstone for decedent and his wife (amounting to $150), the income from the balance to be used specifically for the "perpetual care and upkeep" of decedent's cemetery lot. Affirming the judgment the court held that the trust was not for charitable purposes and thus void because it created a perpetuity in violation of article XX, section 9 (p. 446).

■ The bequest in *Pfund* is far different from that in the *Campbell* instrument. While Alice Campbell imposed a condition upon appellant church in its *acceptance* of the bequest, she clearly did not impose any condition on the *use* of the fund as in *Pfund* and the foregoing cases. Under no part of paragraph Sixth is appellant church directed or obliged to spend the income or any part thereof for the noncharitable purpose of maintaining the Campbell cemetery lot, specifically, the income is to be "used by said church as may be determined by the rector and vestry of such church"; and there is no evidence in the record before us that appellant church intends to use any of such income for the care of the lot. The Sixth paragraph requires that in "accepting" the fund the legatee shall execute a collateral written agreement to provide adequate perpetual care for the Campbell cemetery lot; that it did by resolution filed with the court (Exh. E). Therein it also accepted the bequest and acknowledged that the fund shall be kept intact, the interest to be used by it as "may be determined by the rector and vestry of the church."

Respondent seeks to defeat the bequest by attempting to bring it within

the ambit of those authorities (*In re Corle* (1901) 61 N.J.Eq. 409 [48 A. 1027]; *Van Syckel* v. *Johnson* (1908) 80 N.J.Eq. 117 [70 A. 657]; *Estate of Sewall,* 14 Cal.App.2d 554 [58 P.2d 744]; *Buchanan* v. *Kennard* (1911) 234 Mo. 117 [136 S.W. 415]) which hold that a bequest of a perpetual fund, part of which income is to be devoted to a charitable purpose and a part to a noncharitable one is void if the latter is more than a *de minimus* sum. (See also, *Estate of Mayer,* 237 Cal.App.2d 549, 553 [47 Cal. Rptr. 44].) To apply these cases he must show (1) that appellant church will require substantially more than a *de minimus* sum to maintain the Campbell lot and (2) that this sum will come from the Campbell bequest. Thus, respondent asks us to assume that a "substantial percentage of the income from the Campbell trust will be used directly or indirectly" for the purpose of maintaining the Campbell cemetery lot. In the absence of any showing in support of respondent's claim we decline to indulge in such an assumption. Nothing in the evidence intimates that any of the monies left by Mrs. Campbell will be used for the care of the lot; the bequest does not so provide and the resolution of appellant church negatives such use of the funds—after having agreed to maintain the lot, the church recognized and acknowledged the use for which the bequest was made. Thus, we may assume that appellant church intends to and will discharge its obligation to provide for care of the Campbell lot out of its own income, collections, general contributions and/or outside funds that might be raised for that purpose or, as is done in most rural communities of the size of Wellsburg,[3] will dispatch to the cemetery, which in all probability is not far distant from the church, a church employee or volunteer to do the necessary work. As in *Estate of Mayer,* 237 Cal.App.2d 549 [47 Cal.Rptr. 44], in which there was no evidence of the cost of the plaques or name plates, there is nothing in our record to show the cost of maintaining the cemetery lot. However, if the maintenance of the lot should cost the church anything, we cannot in light of all the circumstances conceive it to be any substantial amount or anything more than a *de minimus* sum. Again respondent urges the further assumption that if any sum is expended by the church it must come from some form of church asset, thus will come "directly or indirectly" from the income of the Campbell bequest, and "as a matter of accounting" this expenditure must detract from appellant's net income and indirectly detract from the net income of the Campbell trust. As we declined to make the first assumption urged on us, neither can we subscribe to this attenuated thesis.

Respondent has called to our attention a compilation of cases in Annotation following *Re Byrne's Estate* (1953) 98 N.H. 300 [100 A.2d 157] in

---

[3]In 1971 edition, Martindale-Hubbell Law Directory lists Wellsburg as the Brooke County seat, population 4,652.

47 A.L.R.2d 591, from which he has cited the foregoing out-of-state cases on which he relies. The Annotation is entitled "Gift for maintenance or care of private cemetery or burial lot, or of tomb or of monument, including the erection thereof, as valid trust," and is directed primarily to the common situation (such as in *Estate of Pfund,* 93 Cal.App.2d 444 [209 P.2d 52]) in which the trust instrument specifically provides that the care of the cemetery lot shall come from the income of the trust. However, in the lengthy Annotation brief reference is made to conditions such as that found in the *Campbell* will, and they seem to be treated by the courts variously as conditions subsequent or as creating provisions of a purely precatory nature. At page 602 and again at page 624 under part IV, paragraph 14, the annotator states: "A provision for the care or maintenance of a tomb or burial place, attached as a prayer or a condition to a valid bequest, and which does not require any portion of the bequest to be held in trust for the [specified] purpose, is ordinarily recognized as valid." No California case has been cited for the above proposition but the authorities included in the footnote which appear to be cases dealing with its enforceability interpret such testamentary condition as creating a condition subsequent (*Dunne* v. *Minsor* (1924) 312 Ill. 333 [143 N.E. 842]; *Congregational Church* v. *Cutler* (1904) 76 Vt. 338 [57 A. 387]; *In re Raab* (1899) 42 App.Div. 141 [58 N.Y.S. 1043]) or a collateral condition of a precatory nature annexed to a valid bequest.

That portion of the order settling the first and final account denying distribution to appellant church is reversed. The cause is remanded to the superior court with directions to make an order directing distribution of such bequest as provided in Article Sixth of decedent's will to appellant church.

Wood, P. J., and Clark, J., concurred.