[Civ. No. 12970. Third Dist. June 22, 1972.]

THOMAS C. LYNCH, as Attorney General, etc., Plaintiff and Appellant, v. SURPRISE VALLEY LODGE NO. 235, FREE AND ACCEPTED MASONS et al., Defendants and Respondents.

## COUNSEL

Evelle J. Younger, Attorney General, Sanford N. Gruskin, Chief Assistant Attorney General, G. A. Strader and Anthony Joseph, Deputy Attorneys General, for Plaintiff and Appellant.

L. C. Smith for Defendants and Respondents.

## OPINION

PETERSEN, J.*—George M. Kober resided in the town of Fort Bidwell, Modoc County, State of California, in the 1880's. He subsequently moved to Washington, D.C., and thereafter died a resident of that district, and his last will and testament executed in 1928 was admitted to probate in the District of Columbia in 1931.

In 1932 or 1933, pursuant to the terms of the will, the sum of $10,000 was distributed in trust to Northeast Lodge No. 266, Free and Accepted Masons, at Fort Bidwell (hereinafter, "the Fort Bidwell lodge"). The will provided that the $10,000 was "to be invested and reinvested by said Lodge and the income only therefrom [was] to be used for the upkeep of said Lodge, the Peoples Church and Cemetery . . . ." Like the Fort Bidwell lodge building, the Peoples Church and the cemetery owned by that church were located in Fort Bidwell and had been there for many years prior to Kober's death. A portion of the lodge building had long been used for school purposes.

. A different Masonic lodge—Surprise Valley Lodge No. 235—had existed in Cedarville since 1874 and is the respondent lodge (hereinafter, "the Cedarville lodge") in the case before us. Cedarville is a Modoc County

---

*Assigned by the Chairman of the Judicial Council.

community about 25 miles south of Fort Bidwell. In 1962, the California Grand Lodge of Free and Accepted Masons—according to the written attestation of its Grand Secretary—"approved the consolidation of Surprise Valley Lodge No. 235 [the Cedarville lodge] and North East Lodge No. 266 [the Fort Bidwell lodge] to be known as Surprise Valley Lodge No. 235." The Fort Bidwell lodge thereupon ceased functioning as a separate entity. Its members, without reinitiation, automatically became members of the Cedarville lodge, to which they thereafter paid dues. Upon the consolidation of the two lodges, the assets of the Kober trust came under the control of the Cedarville lodge, which, without seeking judicial authorization, undertook a dual role—purporting to act both as successor trustee of the entire trust, and as successor beneficiary of that portion of the trust which the testator had directed be "for the upkeep of said Lodge . . . ."

The Attorney General, as supervisor of charitable trusts, petitioned the trial court for a decree establishing such a trust, designating its beneficiaries, removing respondent lodge from its position as de facto trustee, and appointing a new trustee. The petition (denominated "complaint" below) sought the same relief against certain individual respondents, whose status is less than clear in the record but who apparently are members of respondent lodge, through whom it acts.

A "take nothing" judgment against the Attorney General was entered by the trial court, and petitioner appeals therefrom.

The court found that the Cedarville lodge "is the alter ego" of the Fort Bidwell lodge; that "under said consolidation [the Fort Bidwell lodge] became a part and portion of [the Cedarville lodge] with no change in identity and purpose except in name"; that the Cedarville lodge, "being a kindred agency, became the successor in interest of [the Fort Bidwell lodge], carrying on the identical purposes and functions of [the Fort Bidwell lodge], and in keeping with the gift and bequest of said George M. Kober"; that the Cedarville lodge, "acting by and through its officers and directors, as successors and kindred agency of [the Fort Bidwell lodge], is entitled to administer the funds so received in accordance with the Last Will and Testament of George M. Kober"; that "[i]t is not true that the People's Church and Cemetery are now or have ever been the sole beneficiaries of the bequest" made in Kober's will; that "it was the intention of George M. Kober as expressed in his will that the members of [the Fort Bidwell lodge] be beneficiaries"; that "the members of [the Cedarville lodge], as successors in interest by consolidation . . . , are entitled to the benefits of said trust"; and that respondents "succeeded to

all of the rights and benefits of said bequest pursuant to the provisions of said will . . . ."

From its findings, the court concluded merely that respondents were entitled to judgment against the Attorney General, and that the Attorney General should take nothing by reason of his complaint. The ensuing judgment for respondents declared no rights, but was cast simply as a "take nothing" decree. It was unnecessary, however, for such a declaration to appear on the face of the judgment. In effect, a declaration of rights was set forth in the findings; and the findings may be read in connection with the judgment. (See, *Ampuero* v. *Luce* (1945) 68 Cal.App.2d 811, 820-821 [157 P.2d 899]; cf., *Whipple* v. *Haberle* (1963) 223 Cal.App.2d 477, 484 [36 Cal.Rptr. 9].)

Reasonably construed, the findings (1) declared the existence of the trust, (2) designated its beneficiaries as being those named by Kober—the Peoples Church and Cemetery, and the Fort Bidwell lodge—except that the Fort Bidwell lodge was found to have succeeded the Cedarville lodge as beneficiary, and (3) approved the Cedarville lodge as successor trustee. The Attorney General did not object to the findings or request special findings, and, on this appeal, the Attorney General does not complain of the fact that nowhere in the findings, conclusions, or judgment is the trust described as being "charitable."

The opening brief of the Attorney General frames the issues before us thusly: "The issues on appeal in this proceeding are whether the trial court erred in holding inferentially that the Surprise Valley Lodge of Cedarville [respondent lodge] is a charitable organization. If the Surprise Valley Lodge is not under the facts of this case a charitable organization, the trust, insofar as it makes the lodge a beneficiary, violates the rule against perpetuities and is to that extent void."

As the Attorney General points out, the California rule against perpetuities has historically included both the rule against remoteness of vesting and the rule against restraints on alienation. (See, *Estate of Sahlender* (1948) 89 Cal.App.2d 329 [201 P.2d 69].) Prior to November 3, 1970, perpetuities were barred in this state by former article XX, section 9, of the California Constitution (1879 revision); and, effective November 3, 1970, the same bar was codified as Civil Code section 715. Both provisions state: "No perpetuities shall be allowed except for eleemosynary purposes." (See also, Civ. Code, §§ 715.2, 771; *Haggerty* v. *City of Oakland* (1958) 161 Cal.App.2d 407, 417 [326 P.2d 957].) As used in the quoted provisions, the term "eleemosynary purposes" has consistently been held to be synonymous with "charitable purposes." (*Estate of Wirt* (1929)

207 Cal. 106, 108 [277 P. 118]; *Estate of Sutro* (1909) 155 Cal. 727, 734 [102 P. 920]; *Estate of Campbell* (1971) 20 Cal.App.3d 474, 477 [97 Cal.Rptr. 726]; *Estate of Pfund* (1949) 93 Cal.App.2d 444, 445 [209 P.2d 52].)

It is undisputed that the $10,000 bequest in Kober's will created a per-petuity because the testator—by directing that only the income therefrom be expended for trust purposes—restrained the trustee from alienating the $10,000 corpus. (See, *Estate of Campbell, supra,* 20 Cal.App.3d at p. 477.) It is also undisputed that use of trust income "for the upkeep of . . . the Peoples Church and Cemetery" are charitable purposes. The Attorney General's appeal centers on the consequences flowing from the testator's direction that trust income also be used "for the upkeep of said Lodge . . . ."

At this point it is important to note that, both in the trial court and on this appeal, the Attorney General has never contended that the Fort Bid-well lodge was not a charitable organization. In his complaint, at the trial, and in his opening and closing briefs, the Attorney General has directed his allegations of noncharitable status solely at the Cedarville lodge. In-deed, in arguing to the trial court that certain other beneficiaries would take under the will if the trust failed, the Deputy Attorney General who tried the case stated affirmatively that "These are the alternates who are to take if any of the beneficiaries have gone out of existence, but at the time of distribution the lodge was existing in Fort Bidwell *and it took. There was no problem.*" (Italics added.) And in his opening brief, the Attorney General reiterates this approach by arguing that "Mr. Kober in his will clearly evidenced an intention to benefit the people of the community of Fort Bidwell. Even the trust in favor of the 'upkeep of the Lodge' served a possible public and charitable purpose in that the [Fort Bidwell] lodge building was used as a school . . . ."

In passing upon the Attorney General's contentions, we note at the outset that none of the parties on this appeal have discussed the issues from the standpoint of a possible conflict of laws between those of Cali-fornia and Washington, D.C. ■ Kober died a resident of the District of Columbia and his will was admitted to probate there; consequently, the question whether the testamentary trust was valid under the rule against perpetuities was governed by the law of the District of Columbia. (See, *Whitney* v. *Dodge* (1894) 105 Cal. 192 [38 P. 636].) ■ No federal statute or District of Columbia court decision having been cited to us, we may assume that the law of Washington, D.C., is in harmony with Cali-fornia law. We thus look to California law as we assess the Attorney Gen-

eral's argument. (See, *Bierl* v. *McMahon* (1969) 270 Cal.App.2d 97, 101 [75 Cal.Rptr. 473]; Evid. Code, §§ 220, 452, 453.)

■ The question whether a particular local Masonic lodge is or is not charitable as to its main purposes ordinarily presents an issue of fact. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 271 [62 Cal.Rptr. 12, 431 P.2d 636]; *Estate of Wirt, supra,* 207 Cal. at pp. 109-111; *Estate of Allen* (1971) 17 Cal.App.3d 401, 407 [94 Cal.Rptr. 648]; see, 38 Cal.Jur.2d, Perpetuities and Restraints on Alienation, § 15, pp. 461-462.) ■ The fact that some of the activities of the lodge may not be charitable does not deprive the lodge of its eleemosynary character if its main purposes are charitable. (*Estate of Wirt* (1932) 124 Cal.App. 7, 11 [12 P.2d 95].)

Relying on the aforementioned rule that "No perpetuities shall be allowed except for eleemosynary purposes" (Civ. Code, § 715; Cal. Const., former art. XX, § 9), the Attorney General's theory is that "[o]ne claiming an exemption from a general statute has the burden of proving that he comes within the exemption" (*Norwood* v. *Judd* (1949) 93 Cal.App.2d 276, 282 [209 P.2d 24]); that respondents therefore had the burden of proving that the main purposes of the Cedarville lodge were charitable; that no evidence was offered in support of that burden; that consequently the Cedarville lodge cannot be a beneficiary of the trust without violating the rule against perpetuities; but that the failure of the trust "for the upkeep of said Lodge" does not invalidate the trusts "for the upkeep of . . . the Peoples Church and Cemetery" since all three trusts are not inseparably blended.

The Attorney General's consistent attack upon the charitable nature of only the Cedarville lodge (and not the Fort Bidwell lodge) is fatal to his contentions concerning the rule against perpetuities and the burden of proof. As indicated above, the testator died sometime between 1928 and 1931, but the Cedarville lodge did not assume to act as trust beneficiary (and trustee) until 1962. ■ The Attorney General has apparently overlooked the concept that "in testing a trust agreement for violation of the rule against perpetuities or restraints on alienation, its validity is to be judged as of the date of its inception. [Citation.] That is to say, it is not permitted to wait to see what happens in order to determine the validity or invalidity of the trust." (*Estate of Gump* (1940) 16 Cal.2d 535, 547 [107 P.2d 17].) Where the trust is testamentary, the perpetuities issue is to be determined as of the time of the testator's death. (*Estate of Whitney* (1917) 176 Cal. 12, 15-16 [167 P. 399].) "According to the prevailing view, both under the common-law rule against perpetuities, and under statutory provisions restricting the suspension of the absolute power of alienation or

ownership, the determination of the validity of a future interest is made as of the date the will or deed comes into effect. . . ." (61 Am.Jur.2d, Perpetuities and Restraints on Alienation, § 25, pp. 28-29 (fns. omitted).)

■ Since the Fort Bidwell lodge was named trust beneficiary in the will and was in existence when Kober died, and since the Attorney General has never contended in this case that the Fort Bidwell lodge was noncharitable, the rule against perpetuities is not relevant. Moreover, the Attorney General's perpetuities argument overstates its main premise that "there is not one iota of evidence relating to the question whether [the Cedarville lodge] is in fact performing any charitable functions . . . ." Respondents introduced the charter of the Cedarville lodge into evidence. The charter granted to the master and warden of that lodge "full power and authority . . . to exact from their Initiates and Members such reasonable Fees and Dues as may be necessary for the maintenance of their Lodge, for the relief of poor and distressed Brethren, their Widows and Orphans, and for the regular payment of their annual contributions to the Grand Lodge . . . ." Insofar as the charter contemplated the relief of impoverished lodge brothers and their families, it was some evidence (albeit slight) that a main purpose of the Cedarville lodge is charitable. (See, *Estate of Willey* (1900) 128 Cal. 1, 12 [60 P. 471]; cf., *Estate of Allen, supra,* 17 Cal.App.3d at p. 409.)

Stripped of its resort to the rule against perpetuities, the Attorney General's argument seems to be suggesting that the Kober trust "for the upkeep of said Lodge" failed when the two lodges consolidated, and that the cy pres doctrine cannot save the trust absent proof that the Cedarville lodge is charitable. When his argument is viewed in that light, the Attorney General (rather than respondents) had the burden of proving that the Cedarville lodge is not a charity and that, by reason thereof, the consolidation was ineffective to continue the trust. "The burden of proving the termination of a trust, where the trust is proved or admitted and its termination is asserted, is on the party making such assertion, and where an effort is made to terminate a trust because its purposes are not being carried out as the testator or settlor directed, the burden of proving such noncompliance by clear evidence is on the moving party. [Paragraph omitted.] The burden of proving a failure to carry out the purposes of a trust, as a ground for its termination, is on the party seeking the termination." (54 Am.Jur., Trusts, § 604, pp. 467-468 (fns. omitted); see also, *O'Hara* v. *Grand Lodge I.O.G.T.* (1931) 213 Cal. 131, 139 [2 P.2d 21]; Evid. Code, § 500.) Apart from the fact that the Attorney General introduced no evidence that the Cedarville lodge is noncharitable, the cy pres doctrine appears inappropriate to this case since no attack is made on the court's finding that

the lodges were consolidated without any change in the identity of the Fort Bidwell lodge.

In addition, the Attorney General had the burden at trial of proving grounds for the removal of the Cedarville lodge as trustee. (*Estate of Canfield* (1947) 80 Cal.App.2d 443, 451 [181 P.2d 732].) On behalf of the Attorney General, it was conceded in the trial court that a trustor may appoint a trust beneficiary as trustee. On this appeal, the briefs of the Attorney General assert the bare conclusion that the Cedarville lodge should be removed as successor trustee (as well as successor beneficiary); but no argument is made as to why it is improper for that lodge to be trustee, and the point therefore warrants no further consideration.

The judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1972.