[Civ. No. 2049. Fifth Dist. Oct. 9, 1974.]

Estate of FRANK P. GHIGLIA, Deceased.
ROBERT J. GHIGLIA, Petitioner and Appellant, v.
FRANK P. GHIGLIA, JR., as Executor, etc., Claimant and Respondent.

## COUNSEL

Jess F. High for Petitioner and Appellant.

Keith D. Sharrow for Claimant and Respondent.

## OPINION

**FRANSON, J.**—Appellant, one of three surviving children of the testator, Frank P. Ghiglia, challenges the validity of a testamentary trust established for the benefit of appellant, his sister and their children (testator's grandchildren), on the ground that the gift to the grandchildren of a future interest in the trust estate, the possession of which is deferred until the youngest grandchild reaches age 35, is a class gift which includes any grandchild born after the testator's death, thus permitting the vesting of the interests of the class members beyond a life in being and 21 years in violation of the rule against perpetuities. We hold that, although the gift to the grandchildren violates the vesting rule, under the authority of Civil Code section 715.5,[1] we should order the will reformed to require the vesting of the interests of all class members within the allowable period of time.

Frank P. Ghiglia died on January 1, 1972, a widower. He was survived by three grown children, Frank P. Ghiglia, Jr., Adeline Marguerite McClintock and Robert J. Ghiglia. Each child had two children. Frank P. Ghiglia, Jr. had two sons, Frank Joseph Ghiglia and George Frank Ghiglia. Adeline Marguerite McClintock had a son, John Arthur McClintock, and a daughter, Nancy Ann [McClintock] Berge. Robert J. Ghiglia had two sons, William Joseph Ghiglia and John Robert Ghiglia. At the time of the testator's death, the testator's daughter, Adeline, who was divorced, was about 53 years of age, the testator's son Robert, was about 51 years of age, and Robert's wife was about 45 years of age; all of the testator's grandchildren were adults.

Decedent left a will which was admitted to probate. The testator's oldest son, Frank, was named executor in the will. The will provides that Frank shall receive one-third of the estate outright after certain household furni-

[1]Civil Code section 715.5 provides: "No interest in real or personal property is either void or voidable as in violation of [the rule against perpetuities] if and to the extent that it can be reformed or construed within the limits of that [rule] to give effect to the general intent of the creator of the interest whenever that general intent can be ascertained. This section shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent."

ture, automobiles and personal belongings are divided equally among Frank and the other two children, Adeline and Robert. The will then provides in the fourth clause as follows:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"B) The remaining two-thirds, IN TRUST—to Frank P. Ghiglia and the Bank of America National Trust and Savings Association, for the uses and purposes hereinafter set forth.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"E) The NET INCOME of THE TRUST ESTATE shall be distributed as follows:

"1) One full share to my daughter Adeline Marguerite McClintock.

"2) One full share to my son Robert J. Ghiglia.

"3) The net income to my daughter Adeline Marguerite McClintock and my son Robert J. Ghiglia shall be distributed in convenient installments, not less frequently than quarterly during their life-time.

"F) Upon the death of my daughter Adeline Marguerite McClintock, the Trustees shall apportion her share of the net income and pay the same to my grandchildren Nancy Ann McClintock and John Arthur McClintock, equally.

"G) Upon the death of my son Robert J. Ghiglia, the Trustees shall apportion his share of the net income and pay the same to my grandchildren William G. Ghiglia and John Ghiglia, equally.

"Upon the death of each of my children, Adeline Marguerite McClintock and Robert J. Ghiglia, the trust shall terminate *provided, however, if any of my grandchildren have not attained the age of thirty-five (35) years, the two trusts shall continue until all of the grandchildren have attained the age of thirty-five (35) years. In other words, each trust shall continue in full force and effect, until all of my grandchildren reach the age of thirty-five (35) years.* Upon such termination the entire Trust Estate shall be distributed to the persons for whom said estate is then held in trust, in proportion to the trusts then held for such persons and, if there shall be no such persons surviving, then said Trust Estate shall be distributed to my heirs, to be determined according to the laws of California relating to the succession of separate property in force at the date of such termination."

On March 12, 1973, Robert Ghiglia filed a petition to determine the interests under the will. The petition sets forth the fact that the three children were the decedent's heirs-at-law and alleges that the grandchildren's interests under the trust violated the rule against perpetuities. Following a hearing, the trial court upheld the validity of the trust by deciding that the testator's use of "grandchildren" in the will had reference only to the four children of Adeline and Robert alive at the testator's death and, therefore, the gift to them did not violate the vesting rule. Robert Ghiglia appeals from that decision.

## VIOLATION OF VESTING RULE

We commence our decision by reciting the general rules of law applicable to the questions before us. Civil Code section 715.2 codifies the common law rule against perpetuities; it provides that no interest in real or personal property is valid unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest. Civil Code section 715.6 sets forth an alternate period in gross; it provides that "No interest . . . which must vest, if at all, not later than 60 years after the creation of the interest violates Section 715.2 . . . ."

■ The determination as to whether a future interest vests within the time allowed is made as of the moment the instrument containing the limitation speaks; we are not permitted to wait and see what happens in order to determine its validity. (*Estate of Gump,* 1b Cal.2d 535, 547 [107 P.2d 17].) Thus, the validity of an interest in a testamentary trust is determined at the time of the testator's death. (*Estate of Whitney,* 176 Cal. 12, 15-16 [167 P. 399]; *Lynch* v. *Supreme Valley Lodge No. 235,* 26 Cal.App.3d 265, 271 [103 Cal.Rptr. 1].) Moreover, it is not the probability that a perpetuity may have been created that brings the rule into operation. If, at the time of the creation of the interest, there exists even a bare possibility that the interest involved may not vest within the prescribed period, the rule has been violated. (*Estate of Johnston,* 47 Cal.2d 265, 270 [303 P.2d 1].)

■ If the possession of a testamentary gift to a class is postponed to a future time, the class includes all persons coming within the description within the time to which possession is postponed. (Prob. Code, § 123.) If the gift is not of a specific sum to each member or subgroup in the class, then the gift violates the vesting rule because the interest of each member cannot be finally ascertained until the membership is fixed. (*Estate of Van Wyck,* 185 Cal. 49 [196 P. 50]; *Estate of Maltman,* 195 Cal. 643 [234 P. 898]; *Estate of Troy,* 214 Cal. 53 [3 P.2d 930]; Rest., Property, §§ 371 et seq., 386.)

In determining whether the testator intended the trust estate eventually to go to his four named grandchildren or to all of his possible grandchildren as a class, we must look to the language of the will and the surrounding circumstances (Prob. Code, § 101; *Estate of Van Wyck, supra,* 185 Cal. 49; Rest., Property, §§ 242, coms. h and i, 244 (b)) and, inasmuch as a will speaks from the date of the testator's death, we also must consider the state of things then existing. (*Estate of Babb,* 200 Cal. 252 [252 P. 1039].)

In the instant case, the testator's language is ambiguous. In subparagraph "F)" and "G)" of paragraph "Fourth" of the will, he provides that upon the death of the life beneficiaries of the trust (his daughter, Adeline, and his son, Robert), the trustee shall pay the net income to his four named grandchildren. Subparagraph "G)" then provides among other things that the trust shall continue "until *all of my grandchildren* have attained the age of thirty-five (35) years. In other words, *each trust* shall continue . . . . , until *all of my grandchildren* reach the age of thirty-five (35) years. Upon such termination the entire trust estate shall be distributed to the persons for whom said estate is then held in trust . . . ." (Italics added.)

The first question to be decided is whether the phrase "all of my grandchildren" was intended to include the testator's grandchildren by his oldest son, Frank. We think not, for Frank received his one-third of the estate free of the trust, and presumably the testator intended that Frank would support his children during their minority and that they would inherit his estate upon his death. That the testator had this in mind is borne out by the fact that upon the death of Adeline and Robert the income beneficiaries of the trust are only their respective children. Nor do we see any logical reason why the testator would use Frank's children, who are not named as beneficiaries of the trust, as measuring lives to determine when the trust corpus should be distributed to Adeline and Robert's children. Accordingly, we construe the phrase "all of my grandchildren" to exclude Frank's children.

The second question, admittedly more difficult to resolve, is whether the phrase "all of my grandchildren" used to describe the ultimate beneficiaries of the trust corpus was intended to include only the four grandchildren named as income beneficiaries, or whether it was intended to include any additional grandchildren born after the testator's death. If we conclude that the gift of the trust corpus was not limited to the four grandchildren, then the gift was to a class and would include all persons coming within the class description before the time to which possession is postponed. (Prob. Code, § 123; Rest., Property, §§ 371 et seq., 386.)

When the testator executed his will, his daughter, Adeline, then was about 47 years of age, his son, Robert, was about 45 years of age and Robert's wife was about 39 years of age. It is entirely possible that either Adeline or Robert could have had another child. We find nothing in the language of the will to suggest that the testator intended to cut off from his estate any child thereafter born to Adeline or Robert. The fact that the testator designated only his four grandchildren as income beneficiaries does not force another conclusion; this designation is explained simply by the fact that the four grandchildren were the only children of Adeline and Robert living at the time the testator executed his will, and he did not contemplate the birth of an additional child to either Adeline or Robert. This belief becomes even more apparent if we view the circumstances as of the time of the testator's death when Adeline was then 53 years of age and Robert and his wife were 51 and 45 years of age; the testator simply assumed that they would not have any more children.

However, our search to ascertain the testator's intent cannot stop at this point merely because the testator did not contemplate the possibility that additional children might be produced by Adeline or Robert. We must ask: what if the possibility had been brought to his attention—would he none-theless have excluded an after-born grandchild from his estate? In the absence of contrary evidence, we believe the answer is self-evident—he would have wanted· an after-born grandchild to share in his estate. The use of the term "all my grandchildren" in reference to Adeline and Robert's children indicates that he intended that final distribution of his trust corpus would be made to those who would be the natural recipients of his bene-ficient objectives. Interpreting a similar provision in a will, the court in *Estate of Van Wyck, supra,* 185 Cal. at page 57, said: "Reading it as a provision for such grandchildren only as should be born prior to the testa-tor's death, it is an unnatural and unreasonable provision, and one con-trary to the natural meaning of the language used. We think it certain, therefore, that by 'youngest grandchild' the testator meant exactly what he said—his youngest grandchild, whether born before or after his death."

For the reasons stated in *Van Wyck,* we conclude that a reasonable interpretation of the will before us, reading the particular language in the light of the entire testamentary scheme, is that the testator intended to make a gift of the trust corpus to all of his grandchildren, including any born after his death.

It is clear that the gift violates the rule against remoteness of vesting. Either Adeline or Robert, in the eyes of the law, possibly could have an-other child who might not reach age 35 within 21 years after their respec-tive deaths. Moreover, the child could be born more than 25 years after

the testator's death and would not reach age 35 within 60 years after the creation of the interest under the alternative period in gross provided by Civil Code section 715.6.[2]

██ Can we sever the invalid portion from the valid portion, i.e., can we uphold the gift of the trust corpus to the four members of the class living at the testator's death and exclude only the gift to a future member born after his death? We think not, for, again, we find nothing in the will to suggest that had the testator foreseen the partial invalidity of his testamentary scheme that he nonetheless would have intended to exclude a member of the class in order to save the interests of the other members. ██ The test of severability is "whether the two [parts] are so parts of a single plan or scheme or otherwise so dependent one upon the other, that by avoiding the invalid provisions and allowing the valid to stand there will result a disposition of the estate so different from what the testator contemplated or so unreasonable that it must be presumed that [he] would not have made the valid provisions if he had been aware of the invalidity of the others." (*Estate of Van Wyck, supra,* 185 Cal. at p. 62; see also *Estate of Micheletti,* 24 Cal.2d 904, 910-912 [151 P.2d 833].) ██ We hold the gift to the unborn members of the class inseparable from the gift to the living members of the class.

### REFORMATION

██ Contrary to appellant's position, however, it does not follow that the trust should be declared void because the vesting of the grandchildren's interest exceeds the lawful period of perpetuity. The testator's general intent was to create a spendthrift trust under which his children, Adeline and Robert, would receive the income for their lives, but would not receive a fee interest in the corpus—only the grandchildren would receive such an interest after the death of Adeline and Robert. Appellant seeks to overthrow the dominant intention of the testator by having the trust declared entirely void for remoteness merely because the testator is unable to defer the vesting of the trust estate in his grandchildren as long as he wished.

██ Testamentary dispositions that are otherwise valid are not necessarily invalidated by illegal limitations. (*Estate of Micheletti, supra,* 24 Cal.2d 904, 919.) Moreover, Probate Code section 101 provides in part: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, *it must have effect as far*

---

[2]There is little guidance available as to how section 715.6 is to be applied. It is mentioned in *United California Bank* v. *Bottler,* 16 Cal.App.3d 610, 617 [94 Cal.Rptr. 227], and discussed to some extent in Note, *California Perpetuities,* 16 Stan.L.Rev., at pages 184-186.)

*as possible."* (Italics added.) (See also *Estate of Willey,* 128 Cal. 1 at p. 11 [60 P. 471].)

Of particular importance in the present case is Civil Code section 715.5.[3] While we have been unable to find a California case applying this statute to uphold a testamentary disposition in violation of the rule against perpetuities, courts in other jurisdictions have taken such an approach. In *Edgerly* v. *Barker,* 66 N.H. 434 [31 A. 900], the testator left property in trust to be distributed among the children of his living son and daughter when the youngest reached age 40. In order to achieve the testator's primary intent and at the same time conform the trust to the limitation imposed by the rule against perpetuities, the court applied the *cy pres* doctrine and held that the grandchildren's interest would vest at 21 rather than 40. More recently, in *Carter* v. *Berry,* 243 Miss. 321 [140 So.2d 843, 95 A.L.R.2d 791], the court applied the doctrine of "equitable approximation" to make an invalid gift to the testator's grandchildren at age 25 distributable at age 21. (See also Note, 16 Stan.L.Rev., *supra,* at pp. 186-190.) This approach is in accord with English law where the severity of the common law rule has been mitigated by a statute providing, "[T]he disposition should be treated for all purposes as if, instead of being limited by reference to the age in fact specified, it had been limited by reference to the age nearest to that age which would, if specified instead, have prevented the disposition from being so void." (Perpetuities and Accumulations Act of 1964, ch. 55, § 4; see *Perpetuities Reform* (1968) 20 Stan.L.Rev. 471, fn. 36.)

We recognize that the testator intended that the gift of the trust corpus to his grandchildren be delayed until the youngest was sufficiently mature to deal responsibly with his inheritance and that the testator believed that age 35 was a prudent age for this purpose. However, this does not mean that, if faced with the realization that by postponing the vesting in his grandchildren to age 35 he rendered the trust itself invalid, with the result that two-thirds of his estate would be taken outright by Adeline and Robert, he nonetheless would not have elected to set up a trust with the corpus vesting at the time the youngest grandchild reached age 21 rather than age 35. We believe that rather than forego his dominant testamentary plan of preserving two-thirds of his estate for Adeline and Robert's children, he would have intended to give his trust estate to their children within a permissible period of time.

Because it is the duty of the court to give effect to the testator's general intent to the fullest extent possible, we hold that the trial court must use its power as defined in Civil Code section 715.5 to reform the will so that

[3]See footnote 1, *supra.*

distribution of the trust corpus will be made when the youngest grandchild reaches 21 with the result that all class interests must vest within the required time.

The order on the petition for determination of rights and distribution is reversed; the matter is remanded to the trial court with directions to reform the last will of Frank P. Ghiglia, deceased, in accordance with this opinion.

Brown (G. A.), P. J., and Gargano, J., concurred.