[Civ. No. 38956. First Dist., Div. Two. June 3, 1977.]

Estate of MABEL GROVE, Deceased.
SOPHIE LOUISE REED, Petitioner and Appellant, v.
FRANK W. McGINNESS JR., a Minor, etc., et al.,
Contestants and Respondents.

COUNSEL

Walter H. Medak for Petitioner and Appellant.

Knox, Ricksen, Snook, Anthony & Robbins and Robert G. Allen for Contestants and Respondents.

## OPINION

**KANE, J.**—Petitioner, Sophie Louise Reed (Louise) appeals from the trial court's judgment determining entitlement to distribution of the estate of decedent Mabel Grove (Mabel) who died on February 8, 1972.

Mabel had three sisters: Albertina Grove Straub (Albertina), Ruth Grove Schmaling (Ruth), and Irene Grove McRae (Irene). While both Irene and Ruth were childless, Albertina had a son, John Irving Straub (John), and a daughter, Louise. John and Louise each have two children. John has two sons, Michael and Richard; Louise has a daughter and a son, JoAnn McGinness and Frank McGinness, Jr.

The present controversy grew out of the interpretation and interrelation of two holographic wills executed by Mabel on November 19, 1948 and August 18, 1957, respectively. The 1948 will created a trust, the income of which was to be paid in equal shares to Mabel's three sisters; and after the death of the last surviving sister the corpus was to be divided equally between John and Louise.

In her 1957 last will and testament and the codicils executed in connection therewith, Mabel, after making certain small bequests to friends and relatives, again created a trust which provided that: (1) the net income was to go to her sister, Irene; (2) upon Irene's death the trust income was to be divided equally among her remaining two sisters, Albertina and Ruth, and her nephew, John; (3) upon the death of her sisters and John, the income was to be distributed in equal shares to the children of John and her niece Louise; (4) when the youngest of the grandnephews and/or grandnieces reached the age of 50 years, the trust was to terminate and the corpus, was to be distributed share and share alike to the living grandnephews and grandnieces.[1]

---

[1]The pertinent provisions of the 1957 will are set out verbatim as follows:

"I name my sister, Irene Grove McRae to have all net income from my estate during her lifetime if alive at my death to be paid to her quarterly by The Bank of America Trust Co. Oakland, Calif.

"At the death of my sister, Irene Grove McRae the net income from my estate shall be divided equally among the following persons if alive at my death.

"1) Albertina Grove Straub (sister)

"2) Ruth Grove Schmaling (sister)

only

"3) John Irving Straub (nephew);

"If any of the above persons are deceased at my death then the net income from my estate shall be divided among the next two persons—sisters or nephew—half & half alike. When one of the two persons above becomes deceased—then the third person to survive the other two shall received my entire net income from my estate—either a sister or my nephew.

"*When all my three sisters are deceased & my nephew also—then my entire net income shall be divided equally among all my* great *grand nephews &* great *grand nieces—children only of my nephew & niece—John* Irving Straub & Sophie *Louise* Straub McGinness. *This applies only to living grand nephews or grand nieces of myself.* If any grand nephew or grand niece becomes deceased then his or her share of my net income shall be given to the living grand nephews or grand nieces—all children of my only nephew—John Irving Straub & Sophie Louise Straub McGinness, my only niece.

"*When all above persons named as heirs to my net income from my estate—except my grand nephews or grand nieces—are deceased—my estate shall be given outright & divided equally among all grand nephews & grand nieces alike in their shares, providing the youngest of grand nephews or grand nieces is fifty years old.* Then the trust shall be ended by Bank of America & all living grand nephews & grand nieces shall share & share alike my entire estate when the youngest becomes 50 years old." (Italics added.)

As pointed out earlier, Mabel died on February 8, 1972. Her sister Irene, the first in the row of the life beneficiaries, had died in 1966, leaving no children. Ruth died some nine months after Mabel in November 1972, also without leaving any children. The third sister, Albertina, died on August 5, 1973, after renouncing her life interest in Mabel's estate.

In her petition seeking entitlement to distribution, appellant contended that the provisions of the 1957 will and the codicils executed pursuant thereto violated the rule against perpetuities as set out in Civil Code,[2] section 715.2, thereby rendering those instruments invalid. Based on that conclusion, appellant further contended that the estate of the decedent should be distributed according to the provisions of the 1948 will.

In passing upon the contentions of the parties, the trial court concluded inter alia: (a) that the doctrine of dependent relative revocation is inapplicable to the 1948 will; (b) that the 1957 will and the codicils thereto contain a clear, definite and complete testamentary scheme for the disposition of the decedent's entire estate and/or that said testamentary scheme may be ascertained by legally permissible construction and/or reformation; (c) that the reference to "great grand nephews & great grand nieces" in the 1957 will in reality intended to describe the grandnephews and grandnieces of the testatrix (i.e., only the children of John and Louise); and (d) that by using the phrases "all grand nephews & grand nieces" and "all living grand nephews & grand nieces" the testatrix had in mind a class of persons consisting of grandnephews and grandnieces living at the time of the testatrix' death. Accordingly, in disposing of appellant's petition, the trial court ruled that the trustee pay the net income of the trust to John, the nephew of decedent, during his life; that upon John's death the trust income be paid in equal shares only to those grandnephews and grandnieces who were living on the date of the decedent's death; and, finally, that upon the youngest living member of that class attaining the age of 50 years, the remainder of the trust shall be distributed in equal shares to the then surviving members of the class.

The primary issues on appeal are whether the residuary clause of the 1957 will violates the rule against perpetuities as codified in section 715.2, and if so, whether the trial court was justified in construing and reforming the instrument pursuant to section 715.5 in order to carry out the intent of the testatrix and thereby avoid intestacy.

---

[2]Unless otherwise indicated, all references will be made to the California Civil Code.

*Rule Against Remote Vesting:* Section 715.2, upon which appellant mainly relies, codifies the common law rule against perpetuities. It provides in essence that no interest in real or personal property is valid unless it must vest, if at all, no later than 21 years after some life in being at the creation of the interest.[3] ■ As the cases point out, in testing a trust agreement for violation of the rule against perpetuities or restraints on alienation, its validity is to be judged as of the date of its inception. Accordingly, the validity of an interest in a testamentary trust is to be determined as of the time of the testator's death *(Estate of Whitney* (1917) 176 Cal. 12, 15-16 [167 P. 399]; *Lynch* v. *Surprise Valley Lodge No. 235* (1972) 26 Cal.App.3d 265, 271 [103 Cal.Rptr. 1]). Moreover, it is not the probability that a perpetuity may have been created that brings the rule into play. On the contrary, if, at the time of the creation of the interest, there exists even a bare possibility that the interest in question may not vest within the prescribed period, the rule has been violated *(Estate of Johnston* (1956) 47 Cal.2d 265, 270 [303 P.2d 1]).

■ With regard to the validity of class gifts, the statute and the cases underline that if the possession of a testamentary gift to a class is postponed to a future time, the class includes all persons within the class at the time to which possession is postponed (Prob. Code, § 123;[4] *Estate of Clark* (1944) 64 Cal.App.2d 636 [149 P.2d 465]). If the gift is not of a specific sum to each member or subgroup in the class, then the gift violates the vesting rule because the interest of each member cannot be finally ascertained until the membership is fixed *(Estate of Van Wyck* (1921) 185 Cal. 49 [196 P. 50]; *Estate of Maltman* (1925) 195 Cal. 643 [234 P. 898]; Rest. Property, §§ 371 et seq., 386).

In the case at bench the residuary clause of the 1957 will contains a class gift to grandnephews and grandnieces, the extent of which is to be determined at a future date, i.e., when the youngest of the class members reaches the age of 50 years. The phrase "all grand nephews & grand

---

[3]Section 715.2, adopted in 1951, provides *in haec verba:* "*No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest* and any period of gestation involved in the situation to which the limitation applies. The lives selected to govern the time of vesting must not be so numerous or so situated that evidence of their deaths is likely to be unreasonably difficult to obtain. *It is intended by the enactment of this section to make effective in this State the American common-law rule against perpetuities.*" (Italics added.)

[4]Probate Code, section 123, sets forth in part that "A testamentary disposition to a class includes every person answering the description at the testator's death; but *when the possession is postponed to a future period, it includes also all persons coming within the description before the time to which possession is postponed.*'"(Italics added.)

nieces" as used in the will may reasonably be interpreted in a literal sense, so as to embrace all grandnephews and grandnieces of the testatrix, including the afterborn children of John and Louise. If so construed, the residuary clause in dispute potentially violates the rule against remote vesting because there is a probability (even if a slight one) that the gift to the described class vests later than 21 years after some life in being at the time of Mabel's death.

■ *Validation of the 1957 Will*: The crucial question thus arises whether, considering the circumstances of the instant case, the trial court was empowered to construe and/or reform the 1957 will so as to avoid its invalidation as otherwise would be required in accordance with the harsh and strict common law rules pertaining to violations against perpetuities (cf. *McArthur* v. *Scott* (1885) 113 U.S. 340, 382-383 [28 L.Ed. 1015, 1028, 5 S.Ct. 652]; *Estate of Van Wyck, supra,* 185 Cal. 49; 56 A.L.R.2d 450, 451). For the reasons which follow, we conclude that under the general rules relative to interpretation of wills (Prob. Code, §§ 101-103) and the special provisions laid down in section 715.5, the trial court was fully justified in validating the will and thereby giving effect to the clear and ascertainable intent of the testatrix.

■ The general rules pertaining to the interpretation of wills may be stated as follows: In the construction of wills the paramount rule to which all others must yield is that a will is to be construed according to the intention of the testator (Prob. Code, § 101; *Estate of Lawrence* (1941) 17 Cal.2d 1, 6 [108 P.2d 893]; *Estate of Wiemer* (1962) 209 Cal.App.2d 7, 11 [25 Cal.Rptr. 693]; *Schaffer* v. *American Trust Co.* (1958) 164 Cal.App.2d 653, 659 [331 P.2d 188]). The fact that a testator makes a will raises a presumption that he intended to dispose of all of his property. Therefore, whenever possible such interpretation must be placed upon the provisions of a will as will prevent partial or total intestacy (*Estate of Plumer* (1958) 159 Cal.App.2d 389, 393 [324 P.2d 346]; *Estate of Hart* (1957) 151 Cal.App.2d 271, 282-283 [311 P.2d 605]). Doubtful words in a will are to be construed if reasonably possible in a way that renders them operative rather than inoperative (Prob. Code, § 102; *Estate of Bernatas* (1958) 162 Cal.App.2d 693, 700 [328 P.2d 539]).
■ Finally, the cases dealing with the special problem here involved underline that section 715.2, embodying the California rule against perpetuities, ought to be liberally construed (*Estate of McNeill* (1964) 230 Cal.App.2d 449, 452 [41 Cal.Rptr. 139]), and also that a document should be interpreted if feasible to avoid the conclusion that it violates the rule

against perpetuities (*Wong* v. *Di Grazia* (1963) 60 Cal.2d 525, 539-540 [35 Cal.Rptr. 241, 386 P.2d 817]).

When read in light of the foregoing principles, the 1957 will reveals that its residuary clause is ambiguous and can be reasonably interpreted so as to avoid the application of the rule against perpetuities. First, it is worthy of note that the testatrix failed to explicitly provide that the grandnephews and grandnieces mentioned in the will also include afterborn grandnephews and grandnieces. Second, after providing that "When all my three sisters are deceased & my nephew also—then my entire net income shall be divided equally among all my great grand nephews & great grand nieces—children only of my nephew & niece— John Irving Straub & Sophie Louise Straub McGinness," the testatrix immediately added, "This applies only to *living* grand nephews or grand nieces of myself." (Italics added.) Third, there is also language in the will stating that "If my nephew—John Irving Straub or my niece—Louise Straub McGinness have *other children born* to them after this will is dated & *before the date of my death* they shall receive $100.00 each . . ." (italics added). All these taken together may give rise to a reasonable inference that by using the phrase "all grand nephews & grand nieces" the decedent meant only those members of the class who were alive at the time of her death. Since the time of vesting is measured by the lives in being at the time of the testator's death plus 21 years, it is clear that if afterborn grandnephews and grandnieces are excluded from the class of beneficiaries, the rule against perpetuities is not violated.

At the same time, it is equally evident that an opposite interpretation, rendering the 1957 will invalid due to an alleged violation of the rule against remote vesting, would manifestly defeat the testamentary intent expressed in the instrument, and thereby would run counter to the most important rule relating to the interpretation of wills. A short review of the 1957 will shows that the dominant intent of the decedent was to provide for her nephew John and her grandnephews and grandnieces, the children of John and Louise. Should the entire trust be invalidated for the technical violation of the rule against perpetuities, the all pervasive testamentary intent would be thwarted and frustrated. This is true whether the estate would pass under the 1948 will or by intestacy. In either case, one-half of the estate would pass outright to appellant who was totally excluded from the 1957 will; at the same time, in clear violation of the intent of the testatrix, the grandnephews and grandnieces, the primary beneficiaries of the testatrix' bounty, would not

inherit any portion of the decedent's estate other than the token $100 cash bequests.

■ But quite apart from the general rules of interpretation, the trial court was not only empowered, but also mandated under section 715.5, a specific statute, to construe and reform the will in order to avoid the invalidating consequence of section 715.2 and to give effect to the general intent of the testatrix. Section 715.5, adopted in 1963, provides that "*No interest in real or personal property is either void or voidable* as in violation of Section 715.2 of this code if and *to the extent that it can be reformed or construed* within the limits of that section *to give effect to the general intent of the creator of the interest whenever that general intent can be ascertained.* This section shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent." (Italics added.)

As pointed out by the authorities, the clear intent of the statute is to ameliorate the harshness of the rule against perpetuities and to adopt the common law doctrine of *cy pres* and to expand its application from the charitable field to instruments in general. "One of the principal criticisms of the common law rule against perpetuities which has been made in recent years, is that the consequences of a violation are unduly harsh. Thus, it has been commonly held that, if a contingent interest violates the rule, it is totally void; whereas it is argued that it should be possible to give effect to the settlor's intent as nearly as possible (cy pres), by reforming the instrument to conform to the rule, in such a manner as the settlor would have preferred had he known of the violation. The subsection designed to effectuate this reform is [715.5] . . ." (Simes, *Perpetuities in California Since 1951* (1967) 18 Hastings L.J. 247, 253).

The policy that section 715.5 is to be applied liberally so as to save the testamentary gift whenever possible was recognized in *Estate of Ghiglia* (1974) 42 Cal.App.3d 433 [116 Cal.Rptr. 827]. In that case appellant, one of the three surviving children of the testator challenged the validity of a testamentary trust established for the benefit of appellant, his sister and their children on the ground that the gift to the grandchildren, the possession of which was deferred until the youngest grandchild reached 35, was a class gift which included afterborn grandchildren, and thereby violated the rule against remote vesting. The court agreed that the traditional rule against perpetuities was violated, but held that there was a duty, codified in section 715.5, to reform the will to conform to the

testator's intent. In accordance therewith, the trust instrument was reformed under the authority of section 715.5 to provide that the grandchildren would obtain possession of the trust corpus at age 21, the allowable period of time, rather than at 35 as originally provided in the instrument.

The trend toward reformation of an invalid gift has also received repeated approval by the courts of sister states. In the leading case, *Edgerly* v. *Barker* (1891) 66 N.H. 434 [31 A. 900], the testator left his property in trust to be distributed among the children of his living son and daughter when the youngest grandchild reached the age of 40. In order to carry out the primary intent of the testator, while conforming the trust to the limitation imposed by the rule against perpetuities, the court applied the *cy pres* doctrine and held that the grandchildren's interest would vest at 21 rather than 40. In *Carter* v. *Berry* (1962) 243 Miss. 321 [140 So.2d 843, 95 A.L.R.2d 791], the court faced a problem similar to *Edgerly*. In *Carter,* the testator created a trust which was to terminate when the youngest of his grandchildren " ' . . .whether now living or hereafter born. . .' " reached 25 years of age. Dealing with the problems stemming from the rule against perpetuities, the court pointed out that in perpetuity cases the gifts fail mainly for two reasons: (a) because the gift is contingent upon a person's reaching an age in excess of 21; and/or (b) because the gift includes persons unborn at the creation of the interest. While acknowledging that by way of reformation the court could eliminate unborn children, in *Carter* the court applied the doctrine of "equitable approximation" and in order to validate the gift, held that the trust would terminate when the youngest grandchild reached the age of 21. (Also see *In re Estate of Kelly* (Miss. 1967) 193 So.2d 575; *In re Foster's Estate* (1962) 190 Kan. 498 [376 P.2d 784, 98 A.L.R.2d 795]; *In re Estate of Chun Quan Yee Hop* (1970) 52 Hawaii 40 [469 P.2d 183]).

 In sum, we conclude that in the circumstances here present the trial court was fully justified in construing and/or reforming the 1957 will to the effect that the grandnephews and grandnieces named in the will included only those grandnephews and grandnieces (the children of John and Louise) who were living at the time of the death of Mabel. Consequently, the 1957 will did not violate the rule against perpetuities codified in section 715.2.

In light of our conclusion, the question whether the 1948 will could be revived by applying the doctrine of dependent relative revocation (*Estate*

*of Kaufman* (1945) 25 Cal.2d 854 [155 P.2d 831]) and the additional incidental issues raised by the parties need not be decided.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.